**STATE of Missouri, Respondent,**

v.

**Betty D. MUELLER, Appellant.**

**Betty D. MUELLER, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 63017, 60245.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 15, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 15, 1994.

Application to Transfer Denied
April 26, 1994.

Arthur S. Margulis, Margulis and Grant, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., F. Martin Dajani, Asst. Atty. Gen., Jefferson City, for respondent.

SIMON, Presiding Judge.

Appellant, Betty D. Mueller, appeals her convictions for murder in the second degree, § 565.020.1 R.S.Mo 1986 (all further statutory references shall be to R.S.Mo 1986 unless otherwise noted), and armed criminal action, § 571.015, for which she was sentenced to consecutive terms of life and 50 years imprisonment respectively. She also appeals the denial of her post-conviction relief (Rule 29.-15) motion.

On appeal, appellant contends the trial court erred in (1) allowing the introduction of a videotaped statement of a state's witness, Kenneth Cook, as a prior consistent statement; (2) admitting the videotaped statement as substantive evidence and permitting the state to argue the contents thereof; and (3) admitting portions of the videotaped statement which were inadmissible as hearsay and which did not rehabilitate Cook's sworn testimony. She also claims the motion court erred in denying her Rule 29.15 mo-

tion, based on ineffective assistance of counsel, after an evidentiary hearing. We affirm.

Viewed in a light most favorable to the verdicts, the evidence reveals that on September 16, 1989, appellant, her brother Donald Winters, Kenneth Cook, and the victim Mary Tringle, went to a barbecue in North St. Louis County at the home of the victim's friend. The four left the barbecue around sunset and drove towards appellant's home in Jefferson County. Appellant and Cook rode in one car, while Winters and victim rode in another car. At some point, appellant and Cook argued, and Cook got out of the car on the shoulder of the highway. Appellant also argued with Winters after she had signalled him to pull over onto the shoulder of the highway. Appellant told Winters to leave the car on the highway so that her former husband, Don Mueller, could have it towed home from there. Winters refused, and drove with the victim to appellant's home in Jefferson County. Appellant arrived there minutes after Winters and the victim, and Don Mueller was also there. The members of the group, except Don Mueller, continued to drink and argue. Apparently, appellant was upset with Winters and the victim over the use of her credit cards and the fact that she was the only one in the group with any money. At some point, the victim stated that she was tired and went to lie down in a back bedroom. Subsequently, around 10:30 p.m., Winters and Don Mueller left, while the victim remained in the bedroom, so that Winters could visit his wife in North St. Louis County. He was unable to see his wife and eventually they went back to appellant's house in Jefferson County. When they arrived, appellant had the doors locked and a note on the door from appellant which stated that she wanted to go to sleep and that the two should find other arrangements for a place to stay that night. Winters went around to the bedroom window and spoke with appellant who told him to leave and that she did not want to be bothered any more that evening. Winters asked about the victim and appellant stated that the victim had phoned someone to pick her up, and that appellant had directed her to a convenience store to meet her ride. Winters and Don Mueller then left. At some point, around 11:30 p.m. or midnight, appellant went to the home of Virginia Lawrence in the City of St. Louis looking for Cook. Appellant was very upset and dropped off her grandson. The next morning appellant came back around 6:30 to pick up her grandson and stated that everything was all right. Around 8:30 or 9:00 that morning, Cook called appellant. Appellant said she had been looking for him all night and she wanted to see him. Cook went to appellant's home, and appellant told him that she had stabbed and killed the victim, and that she needed help getting rid of the body. Appellant and Cook went to a storage shed in Illinois in which was a cedar chest containing the body of the victim, a mattress, and other items in two plastic garbage bags. They buried the victim in back of an Illinois farm house, and drove around and dumped the mattress and the plastic garbage bags which appellant said contained blood stained linen. They also disposed of a knife in a cornfield in Illinois, and burned the cedar chest. Eventually, Cook was arrested several times for questioning on the disappearance of the victim, and in November, 1989 gave a detailed account of what he had seen and done, and of what appellant had told him regarding the manner of the killing. He accompanied police to the places where he dumped the evidence and where he buried the victim. Eventually, the victim's body was found near a cornfield, in a different spot from the original burial site. The head, hands and a foot had been removed, and the victim had to be identified through x-ray comparisons.

At trial, the state called Cook as a witness. Cook, however, invoked his rights under the Fifth Amendment and refused to testify. The trial court then allowed portions of the transcript of Cook's preliminary hearing testimony, given on January 22, 1990, to be read into evidence by the prosecutor, and portions of the preliminary hearing cross-examination were also read into evidence by defense counsel. Although Cook's preliminary hearing testimony was generally consistent with the videotaped statement he had given police, the videotaped statement contained facts and details not contained in his preliminary hearing testimony.

After the preliminary hearing testimony was read to the jury, defense counsel read to the jury Cook's deposition, given on October 31, 1990, wherein Cook stated the following: His memory of events around September 16, 17, and 18, 1989, was deficient because of his use of cocaine, heroin, amphetamines, marijuana, and alcohol, and it was hard for him to distinguish what actually happened from what people told him happened. The police questioned him on several occasions and had physically abused him. He vaguely remembered attending a barbecue; he did not remember telling the police that appellant killed the victim; he did not recall going with appellant to bury the victim or to dispose of any evidence; and he did not even remember the victim. Cook stated that he couldn't imagine appellant killing the victim and that she wouldn't do it. He also stated that if the police had a statement from him that he did help appellant bury the body, they would have had to coerce it out of him, and that the way they would have gotten such a statement would have been to tell him what happened. He essentially recanted his preliminary hearing testimony by stating that it was based on what the police told him while he was in jail, that it was not truthful, that he didn't know the victim and knew nothing about the murder of the victim, and that he in no way assisted appellant in disposing of the victim's body.

Subsequently, during direct examination of Detective Carl Cullem of the Arnold, Missouri Police Department, the state introduced a videotaped statement of Cook given on November 16, 1989. In the statement Cook states the following: He went to a barbecue with appellant and left appellant's company on the highway. He later telephoned appellant's house and learned that appellant, Winters, and the victim had been arguing over the use of appellant's credit card. He stated that appellant was upset because the victim was supposed to have had oral sex with appellant's son, and because appellant and the victim had just had a fist fight and the victim had beat up appellant. He called appellant's house the next morning and appellant was upset and panicky. Appellant said she had been looking for him all night, and asked him to come to her house.

When he arrived, appellant was very upset and said that she had killed the victim and that Don Mueller was the only one who knew. Don Mueller had walked in and saw her in the process of repeatedly stabbing the victim. Appellant described the squishy sound as the knife went through the victim's body into the mattress. Appellant said she kept saying "die, whore, die" as the victim fought and begged for her life in the name of her children. Appellant said that it started with the victim asleep and that she crept in with the knife with the intention of murder. Cook looked in the bedroom where the stabbing occurred and noted that it had been "stripped" of sheets and the mattress. Appellant stated that she and Don Mueller put everything in plastic bags, put the victim in a cedar chest, and put everything in a storage facility in Illinois. Appellant then asked Cook to help her in disposing of the cedar chest containing the victim's body, the mattress, and other items. The two then took Don Mueller's pickup truck, which had been left at appellant's house, and drove to Illinois. At some point on the way they stopped and picked up the knife used in the murder which appellant had discarded under a bridge in Arnold, Missouri. At the storage facility in Illinois, they took the cedar chest, mattress and other items and drove to an old vacant house with a storage shed on or near Don Mueller's property in Illinois. There, Cook dug a shallow grave, laid the victim's body in it, and covered it over. They then proceeded to a different location and burned the cedar chest, and drove to other locations in the area to discard the knife, the mattress and other items. They then spent the night at Don Mueller's house in Illinois, and the next day appellant drove Cook to St. Louis. He saw her again on October 2, 1989, and she told him that dogs were getting at the body and she had to "re-do the thing." The next morning, Cook took appellant's car while she was in the shower, and appellant reported it stolen later that day.

During closing argument, the prosecutor argued facts gleaned from Cook's videotaped statement, including: appellant crept up on the victim while she was asleep with the intention of murdering her; the victim

begged for her life; appellant responded, "die, whore, die"; appellant described the squishy sound as the knife went through the victim's body and into the mattress; appellant was upset with the victim for supposedly having engaged in oral sex with appellant's son. At the close of the jury's deliberations, appellant was convicted.

█ In her first point, appellant contends that it was error to allow the videotaped statement to be admitted as a prior consistent statement. Appellant argues essentially that the use of a prior consistent statement is limited to those cases where the prior consistent statement rebuts an inference of recent fabrication. Here, appellant argues, Cook's testimony was not impeached on the basis that it was a recent fabrication, thus the videotaped statement does not rehabilitate and is inadmissible. The state argues that because the videotaped statement was (1) prior to and (2) consistent with Cook's preliminary hearing testimony, its use to rehabilitate Cook's testimony was proper.

Some states limit the use of prior consistent statements to situations where proof of the prior consistent statement is relevant to rebut an express or implied charge of recent fabrication. *See,* 4 Wigmore, Evidence § 1129 (Chadbourn Rev.1972), and cases cited therein. Fed.R.Evid. 801(d)(1)(B), also limits the use of prior consistent statements to rebut an express or implied charge of recent fabrication or influence or motive. The federal rule requires that for the prior consistent statement to be admissible, it must have been made before the witness had a motive to fabricate. E.g., *United States v. Smith,* 893 F.2d 1573, 1581[10] (9th Cir.1990). The temporal sequence of a prior consistent statement and of declarant's motive to falsify essentially presents a question of relevancy. *United States v. Hamilton,* 689 F.2d 1262, 1274[21] (6th Cir.1982), *cert. denied sub nom. Wright v. United States,* 459 U.S. 1117, 103 S.Ct. 753, 74 L.Ed.2d 971 (1983).

█ In Missouri, however, the courts have not so limited the use of prior consistent statements. Missouri courts have held that where a witness is impeached by proof of inconsistent statements, then proof of a statement made by the witness prior to the inconsistent statement, which is consistent with the trial testimony, is admissible to rehabilitate the witness. Our Supreme Court has rendered numerous opinions permitting the use of prior consistent statements for rehabilitation purposes, after a witness has been impeached with inconsistent statements, without reference to the specific impeaching effect of the inconsistent statement. E.g., *Stafford v. Lyon,* 413 S.W.2d 495, 498[4, 5] (Mo.1967). For an excellent discussion of the development of this rule in Missouri, *see,* Thomas, *Rehabilitating the Impeached Witness with Consistent Statements,* 32 Mo. L.Rev. 472 (1967).

█ Here, the situation is unique in that Cook, a state's witness, invoked his Fifth Amendment rights and refused to testify. Since Cook invoked his Fifth Amendment privilege against self-incrimination, he was unavailable and his preliminary hearing testimony was admissible. *State v. Franks,* 685 S.W.2d 845, 848[1, 2] (Mo.App.1984). This is not the usual situation where an inconsistent statement is made prior to the trial testimony and is used to impeach the witness, and a consistent statement, made prior to the inconsistent statement, is admitted to rehabilitate the witness. Here, the impeaching statement was made subsequent in time to the two consistent statements. It was the second of these two consistent statements, the preliminary hearing testimony, which the state introduced in the trial as substantive evidence. The witness was then impeached with an inconsistent statement made in a deposition subsequent to his testimony at the preliminary hearing. The first statement of the witness, the videotaped statement, was then introduced to rehabilitate.

█ Thus, Cook's testimony having been impeached with proof of an inconsistent statement, the videotaped statement which is consistent with his testimony and made prior to the impeaching statement is admissible for purposes of rehabilitation. The videotaped statement meets the criteria for admissibility as a prior consistent statement. *See, State v. Henderson,* 666 S.W.2d 882, 891 (Mo.App. 1984). As stated, the law of Missouri does not restrict the use of prior consistent state-

ments to rebut a charge of recent fabrication or improper influence or motive, but permits such statements for whatever rehabilitative value they may have. *See*, Thomas, *supra*, 32 Mo.L.Rev. 472, 486–87. Thus, appellant's first point must be denied.

■ In her second point, appellant contends the trial court erred in admitting Cook's videotaped statement as substantive evidence and permitting the state to argue the contents thereof. Appellant points to items of information which the prosecutor argued and which were contained only in Cook's videotaped statement, such as the fact that the victim begged for her life in the name of her children and appellant responded "die, whore, die," and the fact that appellant repeatedly stabbed the victim. Appellant essentially argues that the videotape was admissible only for its rehabilitative value, and with the use of the videotaped statement as substantive evidence the state could establish a more detailed account of the events.

■ Of the prosecutor's references during closing argument to the substance of the videotaped statement, appellant objected to only two of them. Appellant objected to the prosecutor's argument that the victim was stabbed more than once, and the argument that the victim "begged for her children." These objections, however, were not raised in appellant's motion for new trial. Therefore, appellant's point is not preserved for appellate review, *State v. Stallings*, 812 S.W.2d 772, 778[7, 8] (Mo.App.1991), and we review only for plain error. *State v. Stepter*, 794 S.W.2d 649, 655[11] (Mo. banc 1990). Relief is granted under plain error only when the error so substantially affects the rights of the accused that manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Burgess*, 800 S.W.2d 743, 746[7] (Mo. banc 1990.) Improper argument will constitute plain error only if it had a decisive effect on the jury. *State v. Murphy*, 592 S.W.2d 727, 732[9] (Mo. banc 1979).

Here, appellant argues that without the tape, the only direct evidence would be the statement of Cook from the preliminary hearing, as the remainder of the state's case is circumstantial. She claims that the power of the image of the victim begging and appel-

lant responding "die, whore, die," as she repeatedly stabbed her can be classified only as having a decisive effect on the jury's verdict.

The record reflects, however, that defense counsel also based part of his closing argument on the contents of Cook's videotaped statement. Defense counsel essentially argued the implausibility of the story Cook told in the videotaped statement. He argued that the evidence showed only one stab wound to the victim, and yet Cook stated that the victim was repeatedly stabbed. Defense counsel also argued that the evidence showed no exit wound on the victim, and yet Cook stated that appellant said she could feel the knife going through into the mattress. Counsel also argued that certain witnesses could be believed, but that Cook's statement was unreal.

Thus, the record supports a conclusion that defense counsel made a strategic choice to argue the inferences from Cook's videotaped statement which were favorable to appellant. In addition, defense counsel's argument would tend to blunt the decisive effect which appellant claims the prosecutor's argument had. Therefore, we find no manifest injustice. Point denied.

■ Appellant's third point is that the trial court erred in admitting portions of Cook's videotaped statement, or should have granted a mistrial or given an instruction to disregard after the statement was published to the jury, in that portions of the statement were inadmissible hearsay which did not rehabilitate the witness because they were not consistent with Cook's preliminary hearing testimony. Appellant points to five items of information which provided details beyond the scope of those presented to the jury through Cook's preliminary hearing transcript, including: (1) appellant crept up to the victim's bed with a knife when she was asleep and had the intention of committing murder; (2) the victim begged not to be stabbed by saying, "I got three children—please don't kill me;" (3) appellant kept telling the victim "die, whore, die;" (4) appellant described that she could hear the knife going through the victim's body into the mattress

and it was a squishy sound; (5) there was a motive for the killing in that the victim was believed to have engaged in oral sex with appellant's son.

Before Cook's videotaped statement was published to the jury, defense counsel objected, stating that it was not proper to allow into evidence a statement which was not given under oath to the police. Defense counsel also objected on the basis that the statement did not rehabilitate Cook. The objections were overruled. The record reflects also that defense counsel left the room during the playing of Cook's videotaped statement, and did not object to the specific portions of the statement which appellant now claims were erroneously admitted as beyond the scope of permissible rehabilitation. After the playing of the videotape, defense counsel objected, essentially on the basis that the statement was hearsay because Cook was not available for cross-examination regarding the videotaped statement. Counsel requested a mistrial, or an instruction for the jury to disregard the videotaped statement in its entirety. The trial court stated that the objection was late, and overruled the motion for a mistrial.

■ While a prior consistent statement is admissible to rehabilitate a witness who has been impeached by a prior inconsistent statement, the use of the prior consistent statement should be limited to the extent necessary to counter the subject on which the witness was impeached. *State v. Clark,* 711 S.W.2d 928, 933[12] (Mo.App.1986). The use of a prior consistent statement which exceeds the scope of the impeachment is incompetent and inadmissible. *Id.* Since no timely objection was raised to the portions of the statement about which appellant now complains, the point is not preserved and we review only for plain error resulting in manifest injustice or a miscarriage of justice. *State v. Burgess,* 800 S.W.2d at 746[7].

The record reflects that a transcript of the videotaped statement was not given to the trial court, nor was the trial court given an opportunity to view the videotaped statement out of the hearing of the jury before ruling on its admissibility. Appellant did not request the trial court to edit out the objectionable portions, or request a limiting instruction as to any portions deemed objectionable. The only requested relief was for a mistrial and for an instruction to the jury to disregard the statement in its entirety, which were denied.

As previously noted, the videotaped statement was admissible as a prior consistent statement for the purpose of rehabilitating Cook's testimony after it had been impeached with an inconsistent statement given in a deposition. Cook's deposition, however, also impugned the reliability of his videotaped statement, because he said that if the police had a statement from him saying that he helped appellant bury the victim's body, they would have had to coerce it out of him because he was sure he wouldn't have remembered it, that the police told him what happened and he probably went along with them, that any statements the police had were the result of what they had put in his mind and then questioned him about it, that what he told the police in November, 1989 was not based on what he knew, and that at the time he was addicted to and using drugs.

■ The videotape of Cook's statement is not part of the record on appeal. A transcript of the statement, which is part of the record, reflects portions which would normally be objectionable as hearsay in that they did not rehabilitate the subject on which Cook was impeached. However, appellant, by introducing the portions of Cook's deposition attacking the voluntariness and credibility of his videotaped statement, opened the door on these issues. "It is well-established that on redirect examination, it is proper to examine a witness on any matter which tends to refute, weaken or remove unfavorable inferences resulting from testimony on cross-examination, notwithstanding that the facts elicited may be prejudicial to the defendant." *State v. Lingar,* 726 S.W.2d 728, 734–35[7, 8] (Mo. banc 1987), *cert. denied,* 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987). "Furthermore, where the defendant has injected an issue into the case, the State may be allowed to admit otherwise inadmissible evidence in order to explain or counteract a negative inference raised by the issue defen-

dant injects." *Id.* 98 C.J.S. Witnesses § 490 is also instructive:

> Where matters tending to discredit a witness have been introduced in evidence or drawn from him on cross-examination, it is proper to permit him to explain such matters in order to rebut their discrediting effect or to permit for that purpose the introduction of other competent evidence.

The extent to which rehabilitation is permitted lies primarily in the discretion of the trial court. *State v. Ratliff,* 633 S.W.2d 267, 271[7, 8] (Mo.App.1982). While rehabilitation is normally achieved on redirect examination of the witness, such procedure was not available here because of Cook's assertion of his Fifth Amendment rights. The videotaped statement was therefore introduced during the direct examination of Detective Cullem. Detective Cullem's testimony provided the foundation for the admission of the videotaped statement when he testified that the recording equipment was working properly, and that the videotape was a fair and accurate transcription of what transpired.

In light of the statements contained in Cook's deposition, it was not error to allow the state to present to the jury the entire videotaped statement to show Cook's physical condition, demeanor, and the nature of the interview. The entire videotape was competent to rehabilitate and counteract the negative inferences created by statements contained in Cook's deposition. We perceive no manifest injustice. Point denied.

In her final point, appellant claims the motion court erred in denying her request for post-conviction relief under Rule 29.15. Review of the denial of appellant's motion under Rule 29.15 is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j). The motion court's findings and conclusions are clearly erroneous only if a review of the entire record leaves this court with a definite and firm impression that a mistake has been made. *State v. White,* 798 S.W.2d 694, 697[6] (Mo. banc 1990).

To prevail on an ineffective assistance of counsel claim, a movant must show both that counsel's performance was deficient and that the deficient performance prejudiced her defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). To prove deficient performance a movant must show that counsel's acts or omissions were outside the range of professionally competent assistance. *Id.* To do this a movant must overcome the presumption that counsel's challenged acts or omissions were sound trial strategy. *State v. Flenoid,* 838 S.W.2d 462, 470[18–21] (Mo. App.1992). To show prejudice, a movant must show there was a reasonable probability that, but for the errors of counsel, the jury would have had reasonable doubt respecting his guilt. *Id.* If a movant makes an insufficient showing on either the deficient performance component or the prejudice component, the court need not address the other component. *Id.*

Here, appellant's point on appeal relates to allegations of ineffective assistance of counsel, contained in her motion, which are essentially two fold: (1) Failure to object and request appropriate relief as to specific portions of the videotaped statement which were not admissible as a prior consistent statement; and (2) failing to timely and properly object to the videotape as a prior consistent statement as it improperly bolstered the preliminary hearing testimony of Cook and is not admissible in that it does not refute any evidence or implication of recent fabrication.

With respect to the first of the allegations listed above, the motion court's findings of fact and conclusions of law stated, in pertinent part:

> During the trial, while the videotape was being played, the testimony indicated [defense counsel] left the courtroom and did not object to specific portions of the videotape. [Defense counsel] testified that he was aware of the contents of the videotape and his absence during the playing of the videotape had no effect on his decision not to object to specific portions of it; but rather, it was his trial strategy to leave the courtroom during the playing of the videotape in an attempt to give the jury the impression that the videotape was not consequential to his client's case and also to

avoid his presence giving credence to the videotape. While this trial strategy may be questionable in hindsight, it was not a clearly ineffective act at the time. ...

On appeal, appellant essentially argues that it was one of defense counsel's goals to keep the videotape out of evidence, and that there was no strategic reason not to object to the playing of the inadmissible portions.

The record reflects, however, that appellant was not prejudiced by defense counsel's failure to object to the portions of the videotape to which appellant claims defense counsel should have objected because, as noted in our discussion of appellant's third point, the entire videotaped statement is admissible to counteract the negative inferences, raised by appellant, on the issue of the voluntariness and credibility of the statement and the issue of whether the statement was the product of Cook's own memory. As previously noted, allowing the jury to view the entire videotape was not improper in light of appellant's opening the door on these issues. Therefore, appellant was not prejudiced by defense counsel's failure to object or by his strategy in leaving the courtroom during the playing of the videotape.

Appellant's other allegation, that defense counsel was ineffective for not objecting to the introduction of the videotaped statement as a prior consistent statement, is also without merit. As previously noted, portions of the videotaped statement were admissible as a prior consistent statement. Defense counsel cannot be found ineffective for failing to make a nonmeritorious objection. *Sidebottom v. State*, 781 S.W.2d 791, 799[19] (Mo. banc 1989), *cert. denied*, 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990). Thus, the motion court did not err in denying appellant's motion for post-conviction relief.

Judgments affirmed.

PUDLOWSKI and KAROHL, JJ., concur.