STATE of Missouri, Respondent,

v.

Kirby McCLENDON, Appellant.

Kirby McCLENDON, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 64437, 66141.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 14, 1995.

Laura E. O'Sullivan, Asst. Public Defender, St. Joseph, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David G. Brown, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

The State charged defendant, Kirby McClendon, and Marvel Jones with murder in the first degree and armed criminal action. He appeals after sentencing following a guilty verdict on the lesser-included charge of second-degree murder in violation of § 565.021 RSMo 1986 and armed criminal action in violation of § 571.015 RSMo 1986. Defendant then filed pro se and first amended motions pursuant to · Rule 29.15. The motion court denied defendant's motion without an evidentiary hearing. This consolidated appeal follows.

The evidence was sufficient to support the verdict. The State proved the following facts. Marvel Jones was a crack cocaine dealer, and defendant was his partner. At approximately 6:00 a.m. on June 7, 1991, Jones and Felton "Stretch" Granger got into an argument outside in the 4400 block of Gibson Avenue. Granger was also a drug dealer. The argument escalated into a fight, and Granger "pistol-whipped" Jones, knocking him to his knees. When Granger accidently dropped his gun, Jones went toward it, but Granger retrieved it and shot at Jones. Jones faltered but then got up and fled.

´At approximately 9:00 p.m. that night, defendant and Jones went to Brian Justice's apartment. Jeffrey Jefferson, who was at the apartment, testified that they asked for a ride to a K–Mart store so that defendant could buy some .38 caliber bullets. Jefferson added defendant said he and Jones were "going to pop Felton Granger" because Granger had beaten Jones earlier that day. When no one agreed to drive him to K–Mart,

defendant asked Jefferson for some bullets but he did not have any. Defendant and Jones then left.

At about 9:15 p.m., defendant and Jones approached Sterling Hardin on the street in the 4300 block of Gibson Avenue. Jones asked Hardin to sell him some .38 bullets. When Hardin declined, Jones offered to pay him "a couple dollars per shell." Hardin declined, saying, "[F]or that price, [you] can go to K Mart [sic] and buy some." Defendant and Jones left and walked down Gibson toward Newstead.

At about 9:25 p.m., defendant and Jones walked down Gibson from the direction of Newstead. At first, they were walking together, but Jones slowed a bit and defendant moved slightly ahead of him. Jones stopped behind some bushes in front of Cory Bradley's house at 4415 Gibson. Defendant kept walking. Granger was standing on the front porch of the four-family residence next door to Bradley's at 4421-23 Gibson, with nine-year-old Christopher Harris standing in front of him. Jones pulled a .22 caliber pistol out of his waistband and began firing at Granger. After the first shot, Granger grabbed Harris and used him as a shield. Jones' second shot struck Harris in the chest. It fractured a rib, penetrated his diaphragm, grazed the upper portion of his right kidney, penetrated his stomach, and lodged near his rib cage. Harris, mortally wounded, fell to the ground. Jones then ran toward Newstead, got into a yellow car parked in an alley off Gibson, and drove off. Defendant turned and walked quickly toward Newstead. After he crossed Newstead, he began to run. Tierre Randle picked up Harris and carried him up the street to his grandmother's house. He was taken to a hospital emergency room in full arrest, where he died at 9:56 p.m.

Two months thereafter, the State charged defendant by indictment with one count of first-degree murder and one count of armed criminal action. The case was jury tried in June 1993. The jury found defendant guilty of second-degree murder and armed criminal action.

■ Defendant presents five points on appeal. Point I has merit. There was error. However, we find it was not prejudicial. In Point I, defendant claims the trial court erred in allowing, over objection, testimony that was offered as a prior consistent statement made by State's witness Jeffery Jefferson to Karen Kraft, an attorney. The prior statement that was consistent with the courtroom testimony was made 18 months *after* the prior inconsistent statement and two months before trial. Defendant argues the recent statement was not offered to rebut a charge of recent fabrication. It was offered for the singular purpose of bolstering the testimony of the State's key witness, Jeffrey Jefferson. The State replies as follows: "The trial court did not commit plain error when it admitted into evidence the testimony of State's witness Karen Kraft concerning a prior consistent statement made by the State's witness Jeffrey Jefferson because Kraft's testimony was admissible to rehabilitate Jefferson in that appellant impeached Jefferson's trial testimony with a prior inconsistent statement." The State does not argue the error was not preserved. It argues, on the merits, the testimony was admissible after proof of a prior inconsistent statement. It relies on *State v. Mueller,* 872 S.W.2d 559 (Mo.App.E.D.1994), and a case cited therein, *Stafford v. Lyon,* 413 S.W.2d 495 (Mo.1967).

Jefferson was a long-standing acquaintance of defendant. At trial, he testified that on the night of June 7, 1991, defendant asked for a ride to K–Mart to buy some .38 caliber bullets so he could "pop" Felton Granger. In October 1991, Jefferson made a taped statement for an investigator named Greg Hill, in which he denied defendant made the statements he attributed to him on direct examination. The State brought out the existence of the prior inconsistent statement and that there were subsequent statements that were consistent with the trial testimony about defendant's testimony. On cross-examination, defendant's counsel questioned Jefferson about the inconsistent statement. Jefferson did not deny what he said to Hill, repeatedly stating, "If it was on the tape, I said it. If it wasn't on the tape, I did not say it." Thus he implicitly admitted that he made the prior inconsistent statement in October 1991, which contradicted his trial testimony regarding defendant's incriminating state-

ments. On re-direct, over objection, the State inquired about a prior consistent statement made to Karen Kraft. The court allowed the question "to rehabilitate him."

To rehabilitate Jefferson, the State offered the testimony of Karen Kraft, an attorney. Defendant objected to the admission of this evidence as follows:

> I would object to the testimony of this witness inasmuch as notes taken by Karen Kraft were taken on 4/22/93, a point well past—after the taped interview of Jeffrey Jefferson which was done in October of 1991. I do not think that her testimony qualifies as a prior consistent statement. It's an afterwards consistent statement in point of contention of the tape that was taken in October of 1991 by Mr. Hill. So I don't think it falls into the prior consistent statements category and is nonadmissible by the State.

The court allowed the testimony as a prior consistent statement. Kraft testified that in April 1993, she was present when Jefferson made a statement that was consistent with his trial testimony.

A trial judge has wide latitude in determining whether to admit or exclude evidence adduced by the parties at trial. *State v. Clark,* 711 S.W.2d 928, 932 (Mo.App.1986). In matters involving the admission of evidence, we review for prejudice, not mere error and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *State v. McMillin,* 783 S.W.2d 82, 98 (Mo. banc 1990). Error that may be disregarded as harmless where the evidence of guilt is strong may require reversal in a close case. *Id.*

The rule in Missouri is that when a witness has been impeached by proof of his statements inconsistent with his trial testimony, prior consistent statements are admissible into evidence for the purpose of rehabilitation *if, and only if, the prior consistent rehabilitating statement was made prior to the impeaching statement. State v. Henderson,* 666 S.W.2d 882, 891 (Mo.App. 1984). Here, the consistent statement about which Karen Kraft testified was made in 1993, more than a year *after* the prior incon-

sistent statement. The prior inconsistent statement was made to, and tape recorded by, Investigator Greg Hill in 1991. The subsequent "consistent" statement was therefore inadmissible as a prior consistent statement. The only other purpose for Kraft's testimony was to bolster the trial testimony of the State's key witness, Jefferson. Improper bolstering is forbidden. *State v. Seever,* 733 S.W.2d 438, 441 (Mo. banc 1987).

The State's relies on *Mueller* for the proposition that Kraft's testimony was admissible on the ground that the only foundation required for the admissibility of a such a statement is that the witness must have been first impeached with a prior inconsistent statement. This overstates the rule. In *Mueller,* the impeaching statement was made *after* two consistent statements. The State introduced the second of these consistent statements. The witness was then impeached with an inconsistent statement made in a deposition subsequent to his testimony at the preliminary hearing. The preliminary hearing testimony was then introduced to rehabilitate the witness. The court in *Mueller* held that the preliminary hearing testimony, given before the inconsistent deposition testimony, was admissible for purposes of rehabilitation. The court said, "The statement ... meets the criteria for admissibility as a prior consistent statement. [Citation omitted.] As stated, the law in Missouri does not restrict the use of prior consistent statements to rebut a charge of recent fabrication or improper influence or motive, but permits such statements for whatever rehabilitative value they may have." *Id.* 872 S.W.2d at 563–64. Thus, the prior consistent statement clearly met the requirement that it be made *prior to* the inconsistent statement. Therefore *Mueller* supports the defendant's objection that Kraft's testimony was inadmissible to rehabilitate Jefferson.

*Stafford v. Lyon,* cited in *Mueller,* involved consistent statements made by witnesses in January 1960, followed by inconsistent statements in July 1960, followed by trial. On those facts, the prior consistent statements, made before the inconsistent statements, were properly allowed. Neither *Stafford v. Lyon* nor *Mueller* supports the ruling of the

trial court or the State's argument on the merits.

If a question of fabrication were involved in this case, the consistent statement made two months before trial was recent and the inconsistent statement made 20 months before trial was not. At the time of the consistent statement and at the time of trial, Jefferson was the subject of a probation revocation proceeding for a prior felony conviction of forgery and was in custody on new charges. This fact was the subject of the State's direct examination and defendant's cross-examination. Both examinations emphasize why Jefferson's credibility was a close question and why bolstering was a disputed event.

■ The only issue remaining is whether the error in admitting the testimony was prejudicial. Proof defendant was involved with Marvel Jones' act of murder rested on the jury's assessment of Jefferson's credibility. He was the only witness who implicated defendant and who testified that defendant had any involvement in the crime. Other witnesses placed defendant at the scene of the crime but did not testify to any involvement he may have had. The testimony of Kraft, an attorney, served the purpose of bolstering the credibility of the only witness who connected defendant with the crime by reference to statements attributed to defendant. If the only evidence of guilt was the tainted testimony—Jefferson's testimony at trial together with Kraft's testimony to rehabilitate an opposite version in a prior inconsistent statement—then the sufficiency of proof would be in question. Because of the sequence of Jefferson's statements, Kraft's testimony became one standard to decide the question of Jefferson's credibility. However, Kraft's testimony only proved that Jefferson could make two consistent statements at or near the time of trial. It was not evidence from which the jury could find the recent statement true and the prior inconsistent statement false. Only a statement previous to a prior inconsistent statement could offer the jury a basis to decide which opposing version was credible.

In this case there was such evidence. Jefferson testified his trial testimony on defendant's involvement was the same as his Grand Jury testimony. He told the Grand Jury, *before* the prior inconsistent statement, that defendant ask him for bullets and told him Granger "was going to get popped." The prior consistent statement before the Grand Jury was duplicated by Kraft. Thus, Kraft's objectional testimony was not the only standard for the jury in weighing the effect, if any, of Jefferson's prior inconsistent statement on his credibility. For that reason we find no prejudice.

■ Points II through V are without merit. In point II, defendant argues the trial court erred in failing to declare a mistrial sua sponte during the state's closing argument. We find nothing in the record warranting the declaration of a mistrial sue sponte. Points III and IV both involve defendant's claim that the state failed to make a submissible case. The evidence of death by shooting and Jefferson's testimony of defendant's involvement was sufficient to support a conviction. Defendant's final point concerns submission of the reasonable doubt instruction, MAI–CR 3d 302.04. This matter has been consistently rejected on the authority of *State v. Griffin*, 848 S.W.2d 464 (Mo. banc 1993).

Affirmed.

AHRENS, P.J., and SIMON, J., concur.