STATE of Missouri, Respondent,

v.

Gregory HUDSON, Appellant.

No. ED 87963.

Missouri Court of Appeals, Eastern District, Division Three.

Aug. 21, 2007.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jaime Wilson Corman, Assistant Attorney General, Jefferson City, MO, for Respondent.

S. Kristina Starke, Assistant Public Defender, Saint Louis, MO, for Appellant.

## OPINION

GLENN A. NORTON, Judge.

Gregory Hudson appeals the judgment entered upon a jury verdict convicting him of one count each of murder in the first degree and armed criminal action. We affirm.

## I. BACKGROUND

On April 27, 2004, Ashley Arnold and Cortez Burton were driving to Bonnie Polk's apartment when they saw Hudson, an acquaintance from school, waiting at a bus stop. Arnold and Burton pulled up to the bus stop and asked Hudson if he wanted a ride. Hudson told Arnold that he thought he was going to get a ride from two men, later identified as Johnny Washington and Jarrett Williams, but asked Arnold and Burton to wait five minutes.

A few minutes later, Arnold and Burton were sitting in their car when they saw Hudson in the front seat of Washington's car fighting with Washington and Williams. Burton attempted to break up the fight, but eventually he retreated from the scene of the altercation. After some time, Hudson and Williams rolled out of the passenger side of the car and Williams began to run away. Hudson called Williams a "bitch" and shot him in the back, and then turned to Washington and said, "I oughta shoot your old ass, too." While Washington was ultimately unharmed, Williams died as a result of the gunshot wound to his abdomen.

After the shooting, Hudson ran off and jumped in the back of Burton and Arnold's car as they were driving away. When they approached an intersection, Hudson got out of the car and jumped onto a bus. Arnold and Burton arrived at Polk's apartment and told her that they had witnessed Hudson shoot a man.

Washington was unable to identify the shooter, but an eyewitness, Ronald Walter, saw the altercation and was able to identify Hudson from a photo array and photographed lineup. Walter also witnessed Hudson leave the scene in the vehicle driven by Arnold and reported part of the vehicle's license plate number to the police. Homicide detective Thomas Carroll ran the partial plate number and found two resulting matches, one of which was a Honda Accord registered to Polk.

Detective Carroll telephoned Polk to question her about the vehicle. Polk stated that she had not driven her car on the day of the shooting, but that her friends, Arnold and Burton, had borrowed her car that day. Arnold, who was with Polk at her apartment during the telephone call, got on the phone and admitted to Detective Carroll that she had been at the scene of the shooting. Although Burton was also with Polk and Arnold when Detective Carroll called, Arnold did not hand Burton the phone. Instead, Arnold gave Burton's telephone number to Detective Carroll and agreed to show up later at police headquarters. When Arnold failed to appear for her appointment, the police went to Polk's apartment and apprehended Arnold and Burton. At the police station, Arnold and Burton were placed in separate interrogations rooms and questioned about the homicide. Neither Arnold nor Burton gave police Hudson's name, but they both identified Hudson's photograph from photo arrays. They also both made videotaped statements to the police.

Hudson was arrested and charged with first degree murder (Count I), two counts of armed criminal action (Counts II and III) and attempted first degree robbery

(Count IV). At trial, the State was permitted, over defense counsel's objection, to present Polk's testimony regarding prior consistent statements made by Arnold and Burton when they arrived at Polk's apartment and reported that they had witnessed Hudson shoot Williams.

Hudson was found guilty of Counts I and II for first degree murder and armed criminal action, and was acquitted of Counts III and IV. Hudson was sentenced to consecutive terms of imprisonment for life without parole (Count I) and life (Count II). This appeal follows.

## II. DISCUSSION

### A. Admission of Bonnie Polk's Testimony Regarding Witnesses' Prior Consistent Statements

In his first point on appeal, Hudson argues that the trial court erred in allowing the State to present inadmissible hearsay testimony. Specifically, Hudson claims that the trial court erred in allowing Polk to testify that Arnold and Burton made prior statements to her, consistent with their trial testimony, that they witnessed Hudson shoot Williams. We disagree.

We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *State v. McCoy*, 175 S.W.3d 161, 163 (Mo.App. E.D.2005). An abuse of discretion exists only if the trial court's ruling clearly offends the logic of the circumstances or appears arbitrary and unreasonable. *State v. Strughold*, 973 S.W.2d 876, 887 (Mo.App. E.D.1998). We review matters involving admission of evidence for prejudice, not mere error, and we will reverse only if the defendant demonstrates that the error was so prejudicial that it deprived him of a fair trial. *State v. Moore*, 88 S.W.3d 31, 36 (Mo.App. E.D. 2002). Moreover, the defendant must show that there is a reasonable probability that the result of the trial would have been

different had the evidence not been admitted. *Id.*

"Prior consistent statements are admissible for the purpose of rehabilitating a witness whose credibility has been attacked by an express or implied claim of recent fabrication of trial testimony." *State v. Ramsey*, 864 S.W.2d 320, 329 (Mo. banc 1993). If any evidence tends to permit an inference that a witness's testimony was recently fabricated, then that evidence opens the door for the use of the witness's statements made prior to the suggested fabrication. *State v. Davis*, 186 S.W.3d 367, 375 (Mo.App. W.D.2005). Furthermore, once a witness's credibility has been attacked, prior consistent statements may be used for any rehabilitative purpose, not only in response to charges of recent fabrication or improper influence. *State v. Mueller*, 872 S.W.2d 559, 563–64 (Mo.App. E.D.1994). The use of prior consistent statements constitutes improper bolstering, however, when a witness's out-of-court statement is offered only to be duplicative or corroborative of trial testimony. *Ramsey*, 864 S.W.2d at 329.

Here, Polk's testimony was properly offered to rehabilitate witnesses Arnold and Burton after their credibility was called into question. As the State notes in its brief, defense counsel repeatedly questioned Arnold about her delay in contacting police. Defense counsel also impeached Arnold with her grand jury testimony, in which she stated that Hudson told her before the shooting that he was planning to steal the victim's vehicle. Similarly, defense counsel used Burton's grand jury and deposition testimony that he had taken the keys out of the car, which he recanted at trial, in order to raise the inference that Burton changed his story after conferring with Arnold. Defense counsel also impeached Burton regarding a prior incident with Hudson.

Burton had initially testified that he was present when Hudson had an angry confrontation with Hudson's then-girlfriend, and then at trial stated that he did not know whether Hudson was angry.

Polk's testimony was properly used to rehabilitate Arnold and Burton, as prior consistent statements may be used for any rehabilitative purpose once a witness's credibility is called into question. *Mueller*, 872 S.W.2d at 563–64. As we noted above, defense counsel attacked both Arnold's and Burton's credibility on cross-examination. Polk's testimony that Arnold and Burton told her that Hudson shot the victim essentially made the factual discrepancies raised by defense counsel irrelevant and reaffirmed Arnold's and Burton's credibility as to the key factual issue at trial: whether Hudson shot the victim.

Furthermore, Hudson has failed to show that there was a reasonable probability that the result of the trial would have been different but for the admission of Polk's testimony. Although witnesses Washington and Walter did not witness the precise moment of the shooting, their testimony strongly supported the inference that Hudson was the shooter and did not refute the substance of either Arnold's or Burton's testimony. Therefore, even if we were to determine that the admission of the evidence was in error, Hudson has failed to demonstrate that the error was so prejudicial that it deprived him of a fair trial. Point one is denied.

**B. Admission of Detective Carroll's Testimony Regarding Why Arnold and Burton Were Not Suspects during the Investigation**

In his second point on appeal, Hudson argues that the trial court erred in allowing Detective Carroll to testify that he did not consider witnesses Arnold and Burton as suspects because he believed their statements that Hudson shot Williams. Hudson claims that admitting Detective Carroll's testimony was prejudicial in that it improperly bolstered Arnold's and Burton's credibility. We disagree.

When the issue is properly preserved for appeal, we review a trial court's decision to admit or exclude evidence for an abuse of discretion. *McCoy*, 175 S.W.3d at 163. Here, however, our review of Hudson's second point is limited to plain error because his objection to Detective Carroll's testimony was not included in his motion for a new trial, and the issue was therefore not properly preserved for appellate review. Rule 30.20;[1] *State v. Christeson*, 50 S.W.3d 251, 267 (Mo. banc 2001). Under plain error review, we will reverse only "where the alleged error so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice would inexorably result if left uncorrected." *State v. Jamison*, 163 S.W.3d 552, 560 (Mo.App. E.D.2005). The burden lies on the defendant to demonstrate that the error resulted in manifest injustice. *Id.*

Generally, an expert witness may not testify as to the credibility of another witness because such testimony invades the province of the jury. *State v. Link*, 25 S.W.3d 136, 143 (Mo. banc 2000). Otherwise inadmissible evidence, however, may be admitted by the State to counteract or explain a negative inference raised by an issue the defendant brings into the case. *State v. Kaiser*, 139 S.W.3d 545, 559 (Mo. App. E.D.2004).

Hudson claims that Detective Carroll's testimony was an improper and prejudicial commentary on the credibility of State witnesses Arnold and Burton. The testimony at issue, however, followed this exchange on cross-examination regarding why Detective Carroll did not believe that Arnold

---

**1.** All references to Rules are to Missouri Su-    preme Court Rules (2007).

and Burton were "involved" in the shooting:

> Q  [By Hudson's counsel]:  Didn't you learn from them or from other sources that the alleged shooter had ridden in the car?
>
> A  [By Detective Carroll]:  That they let the defendant in the car?  Well, the way I understood it, they said he went into the car, he got into the car with them, and they weren't going to tell him no 'cause he had a gun.
>
> Q  Right.  And you knew that they waited for him to give him a ride and that [Burton] picked up a brick and that supposedly somebody hit Johnny Washington and that, didn't you know all that stuff, too?
>
> A  Yes, sir.
>
> Q  So that's not being involved?

In response, the State returned to the issue on re-direct:

> Q  [By the State]:  You made the determination not to treat them or not to charge them, is that correct?
>
> A  Yes, sir.
>
> Q  Why did you not charge them?
>
> A  I believed them, believed what they were saying.

 The State elicited this testimony to counteract the negative inference that the police investigation overlooked Arnold and Burton as suspects although they drove Hudson away from the scene and Burton allegedly hit Washington prior to the shooting—an inference that defense counsel raised in its cross-examination of Detective Carroll.  Therefore, Detective Carroll's testimony was properly offered to counteract a negative inference regarding an issue that the defense brought into the case.  *Kaiser*, 139 S.W.3d at 559.

 Hudson also claims that Detective Carroll's testimony was improper because it· was expert testimony regarding the credibility of witnesses, although the State did not offer Carroll as an expert and defense counsel made no such objection to his testimony at trial.  Even assuming *arguendo* that Detective Carroll was testifying as an expert, Hudson has failed to demonstrate that the trial court's decision to allow the testimony was so prejudicial as to constitute a miscarriage of justice.  As we noted previously, the State offered consistent evidence at trial from multiple sources—for example, the testimony of witnesses Washington and Walter along with that of Arnold and Burton, and Detective Carroll's additional testimony regarding the police investigation—that all supported a finding that Hudson shot the victim.  There was, therefore, no manifest injustice in the admission of Detective Carroll's testimony as to why he did not consider Arnold and Burton as suspects.  Point two is denied.

### III.  CONCLUSION

The trial court did not abuse its discretion in admitting Bonnie Polk's testimony regarding prior consistent statements made by witnesses Ashley Arnold·and Cortez Burton.  The trial court also did not plainly err in allowing Detective Thomas Carroll to testify as to why he did not consider Arnold and Burton as suspects.  Therefore, the judgment is affirmed.

ROY L. RICHTER, P.J., and
CLIFFORD H. AHRENS, J., concur.