STATE of Missouri, Respondent,

v.

Cashawn WILLIAMS, Appellant.

Cashawn WILLIAMS, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 66946, 71727.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 23, 1997.

Deborah B. Wafer, Appellate Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

A jury convicted defendant, Cashawn Williams, of trafficking in the second degree, Section 195.223 RSMo 1994, and unlawful use of a weapon, Section 571.030.1(1) RSMo 1994. Defendant appeals the judgments on the convictions of trafficking in the second degree, Section 195.223 RSMo 1994 and unlawful use of a weapon, Section 571.030.1(1) RSMo 1994. Defendant also appeals the decision from the denial of his Rule 29.15 motion without an evidentiary hearing. This issue has not been briefed. The judgments are affirmed.

One of the issues discussed at a pretrial conference concerned the testimony of defendant's brother as a witness for defendant. Defendant told the court his brother was supposed to testify concerning a statement the brother made to an investigator which, if believed, would: (1) refute the state's only evidence of defendant's guilt; and, (2) implicate the brother as true possessor of the weapon and drugs. However, defendant's brother chose to invoke his Fifth Amendment rights against self-incrimination because of threats made against him by one of the arresting officers, Detective Sperber. The prosecutor responded she had questioned the detective about the threatening statement, and he denied making it in that context. The court decided to voir dire defendant's brother. During voir dire, he invoked his Fifth Amendment rights, and stated his invocation of the Fifth Amendment was not induced by threat. Defendant's attorney offered a tran-

script of a taped statement of defendant's brother as an incriminating statement of an unavailable witness. Defendant's brother was unavailable because he invoked his Fifth Amendment rights. The court ruled it would not admit the tape into evidence. After the court's ruling, defendant requested an opportunity to call his brother to invoke his Fifth Amendment rights before the jury. The trial court also denied this request.

During the state's case, it offered the testimony of Officer Kevin Clinton. He testified that he and Officer Gary Sperber were on patrol in the 2200 block of Indiana, in the City of St. Louis, on August 25, 1993, around 4:00 p.m. While on patrol, the officers saw and recognized defendant. Defendant's conduct appeared suspicious to the officers. Defendant began to run. The officers followed him down an alley and into the backyard of his mother's residence. Officer Clinton observed defendant drop a semi-automatic handgun and a plastic bag containing crack cocaine. When Officer Clinton first saw defendant, he did not see a weapon on him. The officers continued to chase defendant, but they lost sight of him. They knocked on the front door of his mother's house. Defendant's brother answered the door. He told the officers defendant was not at home. He left the house and allowed the officers to come in and search the house. After their unsuccessful search for defendant, the officers left. They received an anonymous tip which brought them to the location of defendant. The officers placed defendant under arrest. Officer Clinton's testimony and expert testimony concerning the cocaine is sufficient to support a finding by the jury of all the elements of the charges.

Defendant attempted two offers of proof in an effort to obtain the testimony of defendant's brother, or if he refused to testify, to admit his taped statement into evidence as an admission because it represented a statement against his penal interest. The first offer was attempted during the pretrial conference. Defense counsel called defendant's brother to testify. He asserted his Fifth Amendment privilege not to testify. Defense counsel then informed the court "on the grounds he previously implicated himself, I

do have a tape to that effect ... why don't we mark the tape." He then offered the tape as defendant's Exhibit A. The prosecutor objected, and the court sustained the objection. Thereafter, the state made a motion in limine to "keep out references by the defense with regard to this witness or anything he may have said ... and I anticipate the defense may question my police officer with regard to [the witness] when it's irrelevant to this case and anything they would say would be hearsay." The court agreed and sustained the motion in limine. Defendant made an additional effort to have the benefit of his brother's testimony or to establish a reason for his unavailability. Defendant asked "to make an offer of proof outside the hearing of the jury with Detective Sperber that I can question him then as to those matters outside the jury." The court denied the request. The reason for the court's denial is unclear and unavailable.

Defendant's second offer of proof came during defendant's evidence. Defendant attempted to call his brother to testify in front of or outside the presence of the jury to make an offer of proof. The court denied his request, so he offered the tape into evidence for the purpose of making a record. The court rejected the offer of proof even though defense counsel stated he wanted to enter "these matters into the record for purposes of the Court of Appeals." The reason for the court's denial is unclear and unavailable.

During defendant's case, defendant's mother, Gerry Boyd, testified that on August 25, 1993, she was sitting in her bedroom watching television with two friends and three of her children. She opened the door of her bedroom and saw one detective at the top of the steps inside her home and one at the bottom. Both had their guns drawn. According to her testimony, the police asked her to give them "the gun." Officer Clinton searched her bedroom and then searched the house while Officer Sperber remained in the bedroom with her. Within a few minutes Officer Clinton returned. He said he found drugs and a gun in the back room of her house. The search of the back room occurred outside the presence of defendant's

mother. She also testified that she did not see defendant at any time that day.

Defendant offered witnesses to support an alibi defense. Marvin Rice, an employee of Stan's Pawn Shop, testified that defendant pawned four rings at his place of business on August 25, 1993, the day of defendant's arrest. He could not recollect the time of day defendant came into the shop. Landers Wilbert, a friend of defendant, testified that she was with defendant and Ronald Stevenson on August 25, 1993, when they went to the pawn shop around 12:00 p.m. Ronald Stevenson testified he was with defendant the entire day of August 25, 1993. However, he was uncertain whether Landers Wilbert accompanied them to the pawn shop.

Defendant argues two points on appeal. First, he argues the court erred by not allowing the defense to call defendant's brother to testify or to offer his taped statement as a declaration against penal interest if he refused to testify because it would have exonerated defendant and wholly rebutted the state's evidence. Second, there was insufficient evidence adduced at trial to support a conviction on the unlawful use of a weapon charge.

■ We reject defendant's second point. He argues the evidence was insufficient to support his conviction for unlawful use of a weapon, Section 571.030.1(1) RSMo 1986. The standard of review for sufficiency of the evidence is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found defendant guilty beyond a reasonable doubt. *State v. Hunter*, 939 S.W.2d 542, 544 (Mo. App. E.D.1997). We must accept all evidence as true which tends to prove defendant's guilt, including all supporting inferences from the evidence, and disregard all evidence contrary to the verdict. *Hunter*, 939 S.W.2d at 544. For the evidence to be sufficient to convict defendant of unlawful use of a weapon, the evidence and the reasonable inferences therefrom must show that defendant knowingly carried a dangerous or deadly weapon concealed from ordinary observation. *State v. Foster*, 930 S.W.2d 62, 64 (Mo.App. E.D.1996).

Defendant argues Officer Clinton's testimony would not support a finding he had a full view of defendant's front during the chase. Therefore, his testimony could not establish that defendant had a concealed weapon that was not discernible from ordinary observation. Various portions of Officer Clinton's testimony reveal he had a view of defendant's front, left, right, and back sides. Based on this testimony, there was sufficient evidence from which a jury could find defendant carried a concealed weapon. Point denied.

■ In his first point, defendant argues the court erred by not allowing him: (1) to call his brother to testify; and, (2) to introduce evidence of the threat. In the alternative, defendant contends the statements were declarations against his brother's penal interest and were admissible under *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Generally, in criminal proceedings declarations against penal interests made by an unavailable witness are not admissible as an exception to the hearsay rule. *State v. Blankenship*, 830 S.W.2d 1, 6 (Mo. banc 1992). This has been altered only to the extent required by *Chambers*. *Blankenship*, 830 S.W.2d at 7.

In *Chambers*, the United States Supreme Court held declarations against penal interest in criminal proceedings are admissible when the statements if admitted and believed would have exonerated defendant, and the statements were "originally made and subsequently offered at trial under circumstances that proved considerable assurance of their reliability." 410 U.S. at 300, 93 S.Ct. at 1048. The indices of reliability identified in *Chambers* were: (1) each confession was "in a very real sense self-incriminatory and unquestionably against interest"; (2) each statement was spontaneously made to a close acquaintance shortly after the crime occurred; and, (3) the statements were corroborated by other evidence in the case. *Id.* at 300–01, 93 S.Ct. at 1048–49. Our Supreme Court recognized *Chambers* in *State v. Turner*. *State v. Turner*, 623 S.W.2d 4 (Mo. banc 1981). It cautioned against extending *Chambers* beyond its facts because of the questionable reliability inherent in extrajudicial confes-

sions made by a non-party. *Turner,* 623 S.W.2d at 9.

The extrajudicial statement of defendant's brother does not meet all of the reliability requirements outlined in *Chambers.* First, the incriminating statement was "bracketed by [other] statements denying or repudiating any criminal involvement." *Blankenship,* 830 S.W.2d at 8. Defendant's brother did not admit to owning the gun or carrying the gun that day, and he offered conflicting statements concerning the crack cocaine. In one portion of the taped statement he stated "[The drugs] were mine." However, later in his statement, he told the investigator that "[the drugs] weren't mine." The statement is not "in a very real sense self-incriminatory and unquestionably against interest." *State v. Smulls,* 935 S.W.2d 9, 21 (Mo. banc 1996) *quoting, Chambers,* 410 U.S. at 301–02, 93 S.Ct. at 1048–49 (further citation omitted).

Second, the brother's statement was not made spontaneously to a close friend shortly after the crime. Defendant's brother made the statement to an investigator working on behalf of defense counsel several months after the arrest. Defendant's brother made the statement while the charges were pending against defendant, casting doubt on the spontaneity of the statement. In *State v. Blackman,* 875 S.W.2d 122 (Mo.App. E.D. 1994), we emphasized the significance of making the statements to close friends. A statement made to close friends emphasizes the fact that such admissions are "made as a confidence in the context of a friendship and thus reliable on that basis." *Id.* at 142. Additionally, the statement was made almost four months after the charged crimes. *Smulls,* 935 S.W.2d at 21 (noting defendant's statements at best were made more than two months after the crimes occurred). Therefore, his admission fails the second component of the reliability test in *Chambers.* Further, unlike the statement in *Chambers,* defendant's brother did not make his statement to multiple persons on multiple occasions. *Blankenship,* 830 S.W.2d at 8.

Third, the testimony of defendant's mother and his friends, Ronald Stevenson and Landers Wilbert does not corroborate sufficiently the statement of defendant's brother. Their testimony does not support a finding the drugs or the gun were in the possession of defendant's brother. Additionally, the statement of defendant's brother does not directly refute defendant possessing the drugs and gun on August 25, 1993. Other evidence heard by the jury did offer a defense. Defendant's mother testified the officers came out of the back room of her house saying they found a gun and some drugs, but she did not witness the search of the room. The alibi witnesses did not sufficiently corroborate the statement.

Lastly, as required by *Chambers,* the statement made against the penal interest of declarant, if true, must exonerate the defendant to make the statement admissible. The statement of defendant's brother, if true, does not, on its face, exonerate defendant. If believed it contests the credibility of Officer Clinton, but defendant only argues the issue of exoneration. Defendant was convicted of trafficking and unlawful use of a weapon. His brother never said he had the gun or drugs in his possession that day. He admitted there were drugs and a gun in his house and that he and his brother were holding the gun for a friend. Defendant's brother said defendant had knowledge of the drugs and the gun. Without a direct admission that the drugs and gun were in his possession that day, it is possible that defendant could have been carrying the gun and drugs on August 25, 1993. The statement did not exonerate defendant. Additionally, as stated above, the three indices of reliability set out in *Chambers* must be met to support admission into evidence. *See, Turner,* 623 S.W.2d at 9. None were satisfied. Point denied.

Affirmed.

AHRENS, P.J., and CRANDALL, J., concur.