**STATE of Missouri, Respondent,**

v.

**Bobby L. HARRISON, Appellant.**

No. WD 56609.

Missouri Court of Appeals, Western District.

May 9, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 2000.

Application for Transfer Denied Aug. 29, 2000.

**216**

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before: EDWIN H. SMITH, P.J., and HOWARD and HOLLIGER, JJ.

VICTOR C. HOWARD, Judge.

Bobby L. Harrison appeals from his convictions of murder in the second degree, § 565.021, and armed criminal action, § 571.015.[1] Harrison's sole point on appeal is that the trial court abused its discretion in sustaining the State's objection to his attempt to testify about a prior incident involving Chris Sledd and Carlos Kelly, in that such evidence was relevant to his claim that he shot Jamin McClanahan in self-defense.

We affirm.

### Facts

The evidence most favorable to the verdict is as follows. On December 31, 1997, Jamin McClanahan and his fiancée, Rayanne Johnson, decided to celebrate New Year's Eve with Rayanne's sister, Angela Johnson, and Arqralo Robinson at several Columbia, Missouri night spots. At around 10:30 p.m., they went to Lou's Lounge. After about fifteen minutes inside the bar, they went outside and saw several girls fighting, including Kim and Coretta Williams. Kim and Coretta were fighting Tina and Dee Dee Simpson.

At around 1:30 a.m. on January 1, 1998, McClanahan, Robinson and the Johnson sisters went downstairs to a bar called Big Papa's. A short time later, a fight broke out near the entrance to the bar. Again, Kim and Coretta Williams were involved, along with some of their friends.

McClanahan, Robinson and the Johnson sisters decided to leave Big Papa's. As McClanahan walked up the stairs leading out of the bar, Kim Williams, Harrison, and several other individuals began swinging at and punching McClanahan. Harrison struck McClanahan in the eye with a shoe. McClanahan was "jumping up" and attempting to defend himself by "punching up" at Harrison. Several others, including Carlos Kelly and Chris Sledd, came to McClanahan's aid, and the fight ended.

McClanahan, Rayanne Johnson and Sledd were walking toward their car when Harrison came around the corner and started advancing toward McClanahan. McClanahan, who was unarmed, raised his hands up and said, "If he's going to kill me, he's going to kill me." However, when McClanahan saw Harrison pull out a pistol and point it at him, he turned as if to run. But before McClanahan could take a step, Harrison fired the pistol once, striking McClanahan on the right side of his body, about twenty inches below his shoulder. The bullet wound proved to be fatal.

After Harrison shot McClanahan, he ran from the scene, and guns suddenly "came out of the woodwork." "People started shooting up in the air" and "guns started going off everywhere." Rayanne Johnson said she saw Carlos Kelly start shooting after McClanahan was shot. Robinson said it was actually Sledd who did the shooting. He testified that Kelly handed his gun to Sledd, who started "shooting in the air." In addition to the fatal bullet, police later recovered three 9–millimeter shell casings, three live rounds of 9–millimeter ammunition, and six .380–caliber shell casings in the immediate vicinity of the crime scene.

---

1. All statutory references are to RSMo 1994.

Immediately after the shooting, police searched for Harrison, but were unable to find him at his Columbia apartment or anywhere else. Police did locate Lonnie Williams, Harrison's nephew, who took them to a shed located behind a residence at 507 Lyons Street. There they discovered the .357–caliber Magnum revolver that Harrison had used to shoot McClanahan.

Lonnie Williams told police that Harrison had fired the first shot. He said Harrison had given him the weapon immediately after the shooting and told him to hide it. He also told police that Sledd had a gun and began firing it after McClanahan was shot.

Immediately after the shooting, Harrison went to his apartment, then drove to Boonville with his fiancée, Antonia Thomas, and checked into a motel. He later decided to return to Columbia, and surrendered to police at the Columbia police department. He told the police that he assumed that they wanted to speak with him because he had been involved in a fight at Big Papa's. During the first thirty minutes of the interview he said nothing about the shooting. The interviewing officer told Harrison he believed he was being untruthful, and advised him of his Miranda rights. Harrison then related the following story:

At around 10:45 p.m. on New Year's Eve, he and Antonia Thomas went to Lou's Lounge. While they were there, Kimberly Williams and Leanna Johnson became involved in an argument with Tina and Dee Dee Simpson. He was able to break up the argument before it came to blows.

He and his fiancée decided to leave the bar. As he was leaving Lou's Lounge, he observed the same group of girls, including Kimberly Williams and Leanna Johnson, engaged in a fist fight in the bar's parking lot. He said he physically pulled Leanna out of a group of combatants after she was knocked to the ground. He was also able to pull Kimberly Williams out of the fight.

Harrison and Thomas then went to Big Papa's. He told police that he had been hired by Ed Tibbs to work there as a bouncer that night. He said he thought he arrived at the bar around 1:00 a.m. After parking his car, he retrieved a handgun, a .357 Magnum Blackhawk revolver, from underneath the driver's seat of his vehicle, and put the gun in his front waistband. He said he carried the gun whenever he was working as a bouncer.

On the way to Big Papa's, he ran into his nephew, Lonnie Williams. He said he gave the weapon to Lonnie because he felt it was a real young crowd so he didn't feel he needed the gun. He went inside Big Papa's and saw that Kimberly Williams and the same girls who were fighting in the parking lot had moved the fight into Big Papa's.

Harrison said he was escorting Kimberly Williams outside when Jamin McClanahan "started cursing him." Although he did not know why McClanahan was angry with him, he thought it might have been because "he used to date a gal named Big Kim and that Big Kim was somehow involved in this fight."

Kimberly Williams and McClanahan then began "mouthing at each other." According to Harrison, McClanahan struck Kim and Harrison went over to help her. Harrison said McClanahan "struck him with his fist on the left side of his face." Harrison said the fight ended when "Jamin and a few of his buddies then went back in the bar and slammed the door."

Harrison said that two or three minutes later, Jamin and two of his friends came out of the bar and rushed him. When the interrogating officer asked him what he meant by "rushed," he said they walked toward him. Harrison then held up his hands and said, "Hold up." Carlos Kelly, who was standing to the right of McClanahan, asked him what he meant by "hold up or hold on." Kelly then raised the right side of his shirt to show he was carrying a gun. At this point, Kelly, McClanahan,

and Chris Sledd were about seven or eight feet in front of Harrison.

Harrison turned his back to the three individuals and took a couple of steps back. He then saw a person named Morgan Calhoun walking around the corner. He asked Calhoun, whom he knew to be a friend of Lonnie Williams, if he had his gun, and when Calhoun said yes, Harrison asked him for it. Calhoun gave him the weapon and Harrison put it in the front waistband of his pants.

Approximately a minute later, while Harrison was still facing McClanahan, Kelly and Sledd, he heard a shot. In response, he immediately pulled his gun out and "laid one back." He said he was not aiming at McClanahan, but added that in view of the fact that McClanahan was standing in front of him only a few feet away, he was not surprised he hit him. Harrison said he knew that the shot had not been fired by McClanahan, Kelly or Sledd, because "none of them had a weapon in their hand."

Harrison said he then turned around and started to run. As he was running across the street, he fired a second shot straight up in the air. He ran into Lonnie Williams. He gave Williams his gun and "told him to put it up." Harrison then went to his apartment in southwest Columbia. He and Thomas then drove to Boonville and checked into a motel.

Harrison was charged with one count of murder in the second degree, § 565.021, and one count of armed criminal action, § 571.015. Following a jury trial, Harrison was found guilty of murder in the second degree and armed criminal action. He was sentenced to consecutive terms of 25 and 10 years' imprisonment. This appeal followed.

### Standard of Review

We review the evidence presented at trial in a light most favorable to the verdict. *State v. Hall,* 982 S.W.2d 675, 680 (Mo. banc 1998). The trial court is vested with broad discretion to admit and exclude evidence at trial, and error will be found only if this discretion was clearly abused. *Id.* An abuse of discretion will not be found unless the trial court's decision is clearly against the logic of the circumstances and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration. *State v. Scurlock,* 998 S.W.2d 578, 587 (Mo.App. W.D.1999). Furthermore, in matters involving the admission of evidence, we review for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *State v. McMillin,* 783 S.W.2d 82, 98 (Mo. banc 1990).

### Argument

Harrison's sole point on appeal is that the trial court abused its discretion in sustaining the State's objection to his attempt to testify about a prior incident involving Chris Sledd and Carlos Kelly, in that such evidence was relevant to his claim that he shot McClanahan in self-defense. Harrison claims that he was prejudiced by the court's ruling because it prevented him from putting on evidence to show that he had a reasonable belief that he was in imminent danger of harm during the altercation at Big Papa's on January 1, 1998.

During Harrison's testimony, defense counsel started to ask Harrison about his knowledge of Carlos Kelly's reputation. The State objected, based on its pretrial motion to exclude evidence of specific instances of violent behavior by Chris Sledd and Carlos Kelly. In his offer of proof, Harrison testified that he had seen Kelly and Sledd outside Tony's Pizza a couple of months earlier, as Kelly and Sledd prepared to fight a man named "Earl Jay." Kelly and Sledd stood near Sledd's truck and took guns out of the truck. The trial court sustained the State's objection to evidence about the prior act. The court

later gave the jury an instruction on self-defense.

Harrison argues that because he testified that he saw Kelly with a gun on the morning of January 1, 1998, that Kelly pulled a gun on him, and that he believed he was "up against" McClanahan, Sledd and Kelly, his knowledge of Sledd's and Kelly's "prior violent activities" was relevant to his claim of self-defense.

 Section 563.031.1 provides that [a] person may, subject to the provisions of subsection 2 of this section, use physical force upon another person when and to the extent he reasonably believes such force to be necessary to defend himself . . . from what he reasonably believes to be the use or imminent use of unlawful force by such other person. . . .

Section 563.031.2 provides that "[a] person may not use deadly force upon another person under the circumstances specified in subsection 1 of this section unless he reasonably believes that such deadly force is necessary to protect himself or another against death, [or] serious physical injury. . . ."

Where justification is an issue in a criminal case, the trial court may permit a defendant to introduce evidence of the victim's prior specific acts of violence of which the defendant had knowledge, provided that the acts sought to be established are reasonably related to the crime with which the defendant is charged.

*State v. Waller*, 816 S.W.2d 212, 216 (Mo. banc 1991). In application of this rule, courts must exercise caution. *Id.* The defendant must lay a proper foundation before the evidence may be admitted, other competent evidence must have raised the question of self-defense, and the incidents must not be too remote in time and must be of quality such as to be capable of contributing to the defendant's fear of the victim. *Id.* "[T]he evidence is to be considered solely with regard to the reasonableness of the defendant's apprehension that the victim was about to inflict bodily harm upon the defendant, and not for the purpose of establishing that the victim probably acted in conformity with prior acts of violence." *Id.*

There is difficulty applying this rule to our case. Sledd and Kelly, whose prior specific "act of violence" Harrison wanted the jury to be aware of, were not the victims in this case. Also, at best, Harrison's proposed testimony about the earlier incident involving Sledd and Kelly would only have been relevant to show that Sledd and Kelly were possibly armed. However, at least as to Kelly, this was not in dispute since Harrison was allowed to testify that Kelly flashed a pistol at him shortly before the shooting.

In his statement to the police, Harrison said that he was not aiming at McClanahan when he fired his gun, but added that "knowing [his] distance," he knew he probably hit him. Harrison also said that because McClanahan was standing directly in front of him, he was not surprised he hit him. Harrison said that he did not know who fired the shot that he heard prior to him shooting his first round. However, he said that he did know that the shot was not fired by McClanahan, Sledd or Kelly, "because none of them had a weapon in their hand." He simply heard a shot, and then "laid one back." Similarly, Harrison testified at trial that he did not aim at McClanahan, nor was it his purpose to shoot McClanahan. However, in his videotaped statement to the police, Harrison said he did aim at McClanahan.

 In support of his argument, Harrison cites *State v. Zumwalt*, 973 S.W.2d 504, 506 (Mo.App. S.D.1998), for the rule that "if the killing or injury of a person intended to be hit would, under all the circumstances, have been excusable or justifiable on the theory of self-defense, then the unintended killing or injury of a bystander by a random shot fired in the proper and prudent exercise of such self-defense is also excusable or justifiable." This rule does not support Harrison's ar-

gument. Evidence is relevant if it tends to prove or disprove a fact in issue or when it corroborates other material evidence. *State v. Kidd,* 990 S.W.2d 175, 185 (Mo. App. W.D.1999). Significantly, regardless of whether Harrison was aiming at McClanahan, there was no evidence before the trial court that Harrison was aiming at Kelly or Sledd, or had the purpose to shoot Kelly or Sledd, but inadvertently hit McClanahan. Harrison admitted that he knew that neither Kelly nor Sledd had fired the gun that prompted him to shoot. Therefore, it was not an abuse of discretion to find that any prior incident involving Sledd or Kelly was irrelevant to any claim of self-defense Harrison may have had. The trial court did not err in sustaining the State's objection to the evidence of the prior incident involving Kelly and Sledd.

The judgment of the trial court is affirmed.

EDWIN H. SMITH, P.J., and HOLLIGER, J., concur.