STATE of Missouri, Respondent,

v.

Charles D. ANGLIN, Appellant.

No. WD 58202.

Missouri Court of Appeals,
Western District.

March 20, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 1, 2001.

Application for Transfer Denied
June 26, 2001.

Craig A. Johnston, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Susan K. Glass, Asst. Atty. Gen., Jefferson City, for Respondent.

Before ELLIS, P.J., LOWENSTEIN and BRECKENRIDGE, JJ.

LOWENSTEIN, Judge.

Appellant, Charles Anglin, appeals from his convictions and sentences, following a jury trial, for first-degree murder, § 565.020,[1] and first-degree robbery,

§ 569.020. Anglin was sentenced to life without eligibility for probation and parole for the murder and thirty years for the robbery, with the sentences to run consecutively.

Anglin argues that the trial court erred and abused its discretion in excluding the testimony of Eric Miles, who would have testified about exculpatory out-of-court statements Anglin's co-defendant made to him while they were in prison, and in failing to submit an instruction. Because this court finds that: 1) Anglin's co-defendant's statements to a man he met in jail did not meet the close acquaintance prong of *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); and 2) Anglin did not present any evidence showing that the parenthetical language in "Instruction D," patterned after MAI CR3d 310.06, was required because he suffered from hearing loss, a physical condition, rather than a mental condition, the judgment of the trial court is affirmed.

**Factual and Procedural History**

■ Anglin does not contest the sufficiency of the evidence. The evidence is viewed in the light most favorable to the verdict. *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998). On December 8, 1998, the victim left his home in Columbia at approximately 6:00 p.m. to run errands and to wash his car. While the victim was washing his car at the Oakland Plaza Car Wash, Anglin and Fred Stone arrived at the same car wash.

It was uncontroverted that Anglin and Stone had been planning to rob someone at a car wash so they could steal a car and leave town. When they arrived at the car wash, they were looking for cans to turn in for money. Once Anglin and Stone saw

1. All statutory references are to RSMo 1994, unless otherwise indicated.

the victim, they decided to shoot him and take his car. Anglin approached the victim as he washed his car and shot him from behind with a .410 shotgun. After Anglin shot the victim, the victim turned around and asked Anglin why he shot him. Then Stone shot the victim again with a .357 handgun. The victim died from the gunshot wounds. After the victim was shot by both men, Anglin got into the victim's car and looked for the keys. Meanwhile, Stone was trying to get the victim's body into the backseat of the car. Anglin could not find the keys so Stone took off running and Anglin followed him. After they stopped running, the men looked through the victim's two wallets. Stone found twenty dollars, hid one of the wallets in a tree stump, and threw the other wallet into the woods.

Anglin was charged by a second amended information with first-degree murder and first-degree robbery.[2] After a jury trial, Anglin was found guilty of both of the charged offenses. The evidence was that Anglin said, "You got me," when he was arrested. He also had the handgun Stone used in his pocket. Anglin admitted that he shot the victim and helped hide the body. In written and video statements, Anglin admitted planning a robbery and that someone would probably have to be shot so that he and Stone could get away. This appeal only concerns the first-degree murder conviction.

## I.

Anglin argues in his first point that the trial court erred and abused its discretion in excluding the testimony of Eric Miles, who would have testified about exculpatory out-of-court statements co-defendant Stone made to cellmate Miles about Anglin.

A trial court is vested with broad discretion to admit or exclude evidence at trial. *State v. Harrison*, 24 S.W.3d 215, 218 (Mo.App.2000). Absent a clear abuse of discretion, this court will affirm the trial court's ruling. *State v. Scurlock*, 998 S.W.2d 578, 587 (Mo.App.1999). An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances then before the trial court, and is so unreasonable and arbitrary that the ruling shocks the sense of justice, and indicates a lack of careful deliberate consideration. *State v. Stoner*, 907 S.W.2d 360, 363 (Mo.App.1995). "Furthermore, in matters involving the admission of evidence, we review for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *Harrison*, 24 S.W.3d at 218.

At trial, Anglin sought to introduce the testimony of Miles. Anglin expected him to testify about statements Stone made to Miles while in jail. The state objected to the testimony arguing that it was hearsay. Miles testified in an offer of proof that he met Stone for the first time while they were incarcerated in the Boone County Jail. Stone and Miles talked frequently. During one conversation, Stone told Miles that he went to the car wash to rob someone and that he robbed the victim and then shot him with a .357. Stone also told Miles the following:

> He said [Anglin] walked up to the guy, and the guy turned around. [Anglin] was walking up from behind him as the guy was washing his car. [Anglin] was walking up to the guy. The guy turned around. [Anglin] got ready to raise the shotgun, and it went off and scared [Anglin], and he was just standing there scared with the shotgun. And that's

**2.** The state filed a *nolle prosequi* on the armed criminal action count prior to trial.

why [Stone] came around and shot the guy, because the guy asked [Anglin], "Why did you shoot me ?" And [Anglin] was just standing there scared.

The trial court sustained the state's objection to Mile's testimony on the grounds that Miles was a jailhouse friend, that the statements Stone made to Miles were not within enough close proximity to the crime, and that Miles was not credible.

 Missouri courts had consistently held that a declaration against a penal interest is not admissible as an exception to the hearsay rule in criminal proceedings. *State v. Blankenship,* 830 S.W.2d 1, 6 (Mo. banc 1992). Such statements, however, are admissible as a due process right if made under circumstances assuring their reliability. *State v. Jennings,* 815 S.W.2d 434, 448 (Mo.App.1991). "Appellant must show that the declarant is unavailable as a witness, there is substantial indicia of reliability of the alleged declaration, and the declaration, if true, would exonerate appellant." *Id.* In *Chambers,* 410 U.S. at 300–01, 93 S.Ct. 1038, the Supreme Court recognized three indicia of a statement's reliability: 1) the statement was in a very real sense self-incriminatory and unquestionably against interest; 2) the statement was made spontaneously to a close acquaintance shortly after the crime; and 3) the statement was corroborated by other evidence in the case. The three indicia of reliability set out in *Chambers* must be met to support admission of the statement[s] into evidence. *State v. Williams,* 958 S.W.2d 87, 91 (Mo.App. 1997).

In this case, it is clear that Stone's statements did not meet the close acquaintance prong of *Chambers.* During the offer of proof, Miles testified that he met Stone for the first time in jail, and that Stone made his statements described *supra* approximately five to ten days after

Stone was incarcerated. Miles also testified that he and Stone were close acquaintances, but not close friends, and that he thought Stone was "creepy" and that he did not want to be near Stone. These facts do not establish the close acquaintance prong required by *Chambers.* Miles and Stone met in jail and Stone made statements to him concerning the robbery and murder five to ten days after the two men met. *See State v. Smulls,* 935 S.W.2d 9, 21 (Mo. banc 1996) (the fact that two men met for the first time while in jail and were housed in the same area does not establish that the two men were close acquaintances); *compare Chambers,* 410 U.S. 284, 93 S.Ct. 1038 (declarant's statements were made to a neighbor he had known for twenty-five years).

Anglin cites *State v. Phillips,* 940 S.W.2d 512, 517–18 (Mo. banc 1997), arguing that the Court in that case allowed testimony after noting that the declarant was not a close friend of Joyce Hagar, to whom the declarant spontaneously confessed at a social gathering. In *Phillips,* however, the issue was whether the state's failure to disclose exculpatory evidence, an audiotape of Hagar's statement, to the defense prior to trial amounted to a violation of the defendant's due process rights. *Id.* at 516. *Phillips* is distinguishable from the present case because the Court in *Phillips* was relying on *Green v. Georgia,* 442 U.S. 95, 97, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) in its analysis of whether the exclusion of hearsay testimony would violate a defendant's due process rights where the testimony is "highly relevant to a critical issue in the punishment phase of the trial." *Id.* at 517.

Anglin also cites *State v. Carroll,* 629 S.W.2d 483, 485 (Mo.App.1981), in which the defendant sought to introduce evidence that another man had admitted to a cellmate that he had committed the crime

with which the defendant had been charged. Anglin argues that this court did not deem the man's statements unreliable because they were made to a cellmate rather than a close acquaintance. *Carroll,* however, is also distinguishable.

Although the statement of the declarant in *Carroll* was made to a cellmate, the court was satisfied that the cellmate still qualified as a close acquaintance. Such is not the case here. The court in *Carroll* determined that the evidence provided substantial corroboration of the declarant's statements. *Id.* at 486. Here, this court does not reach the corroboration prong of *Chambers* since the close acquaintance prong has not been satisfied. As stated *supra,* the three indicia of reliability set out in *Chambers* must be met to support admission of the statement[s] into evidence. *Williams,* 958 S.W.2d at 91.

Because this court finds that Stone's statements were not made to a close acquaintance, and as such, did not provide substantial indicia of reliability, the trial court did not abuse its discretion in disallowing the testimony of Miles, nor was Anglin prejudiced by its exclusion. This point is denied.

## II.

■ Anglin argues in his second point that the trial court erred in failing to submit Instruction D, patterned after MAI–CR3d 310.06, which included parenthetical language regarding his ability to understand what he was saying and doing at the time of his statements to the police. When considering whether a defendant was entitled to a particular instruction, this court reviews the evidence in the light most favorable to the defendant. *State v. Davis,* 26 S.W.3d 329, 331 (Mo.App.2000).

At trial, the State presented to the jury a videotaped statement and a written transcript of the statement made by Anglin in which he admits to participating in the robbery and murder of the victim. Anglin offered the following instruction for submission to the jury concerning his statements:

Evidence has been introduced that the defendant made certain statements relating to the offense for which he is on trial.

If you find that a statement was made by the defendant (, *and that at that time he understood what he was saying and doing* ), and that the statement was freely and voluntarily made under all of the circumstances surrounding and attending the making of the statement, then you may give it such weight as you believe it deserves in arriving at your verdict.

However, if you do not find and believe that the defendant made the statement (, *or if you do not find and believe that he understood what he was saying and doing),* or if you do not find and believe that the statement was freely and voluntarily made under all of the circumstances surrounding and attending the making of the statement, then you must disregard it and give it no weight in your deliberations. (emphasis added).

In support of the use of the parenthetical language in the instruction, Anglin presented the testimony of Dr. Edgar Ailor, an otolaryngologist.[3] Dr. Ailor testified that after examining Anglin, he determined that Anglin suffered from mild to moderate high frequency hearing loss in his left ear, and from severe hearing loss in his right ear. It was Dr. Ailor's opinion that on the date Anglin gave his statement

---

3. More commonly known as an ear, nose and throat doctor.

to the police, "he probably didn't hear a whole lot with his right ear. You would expect him to have heard a good portion of what was being said to him with his left ear." Anglin maintains that this evidence concerning his hearing problem supports his theory that he did not understand what he was saying or doing at the time of his statements to police.

The Notes on Use No. 3 to MAI–CR3d 310.06 state:

> The matter in parentheses in the second and third paragraphs should be included in the instruction if there is evidence that the defendant did not understand what he was saying or doing at the time of the statement, whether because of mental disease or defect or because of intoxication, drugged condition, or other mental incapacity, latent or induced, temporary or permanent.

The trial court did not allow the parenthetical language to be included in the instruction, finding that it was not necessary because there was "not a scintilla of evidence that the defendant did not understand what he was saying or doing." Before a party is entitled to an instruction, there must be evidence to support its submission, and absent that evidentiary basis, it is not error to refuse the submission of that instruction. *State v. Hall,* 779 S.W.2d 293, 295 (Mo.App.1989).

The Notes on Use No. 3 to MAI–CR3d 310.06 state that the parenthetical language should be included in the instruction when a defendant does not know what they are saying or doing because of "a mental disease or defect or because of intoxication, drugged condition, or other mental incapacity, latent or induced, temporary or permanent." In this case, Anglin suffers from hearing loss, a physical disability. Even if hearing loss was a condition contemplated in the notes on use, Anglin failed to present sufficient evidence at trial to establish that his hearing loss impacted his ability to understand what he was saying and doing at the time he gave his statements to the police. Dr. Ailor testified that Anglin was able to hear 84 percent of words said to him in his right ear, and 96 percent of words said to him in his left ear. Dr. Ailor also testified that despite Anglin's hearing loss, he would be able to hear what was being said to him if someone was talking to him in normal tones. Further, the transcript of Anglin's statements to the police does not reveal any statements made by Anglin that he did not understand or hear the questions asked or the circumstances surrounding his statements to the police. Anglin's second point is denied.

The judgment of the trial court is affirmed.

All concur.