**STATE of Missouri, Respondent,**

v.

**James MOORE, Appellant.**

**No. ED 79644.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 20, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 8, 2002.

Application for Transfer Denied
Nov. 26, 2002.

Jeremiah W. (Jay) Nixon, Attorney General, Joel A. Block, Assistant Attorney General, Jefferson City, MO, for respondent.

David C. Hemingway, Assistant Public Defender, St. Louis, MO, for appellant.

## GEORGE W. DRAPER III, Judge.

James Moore (hereinafter, "Appellant") appeals his conviction for felonious restraint in violation of Section 565.120 RSMo (2000)[1] and misdemeanor assault in the third degree in violation of Section 565.070 following a jury trial. Appellant was sentenced to concurrent terms of ten years imprisonment for the felonious restraint conviction and one year for the assault conviction. Appellant alleges that the trial court erred by: (1) overruling his motion to quash a peremptory strike of a venireperson on *Batson*[2] grounds; (2) overruling his objection to the admission of a copy of the victim's medical records as improper bolstering; and (3) admitting a tape of the 911 call from the victim which he contends also constituted improper bolstering. We affirm.

Appellant and Yvonne Sanders (hereinafter, "Sanders") met in January 1999 and began living with each other shortly thereafter. On January 27, 2000, Appellant punched Sanders in the eye. As a result of this incident, Sanders' eye remained swollen shut three days afterwards. On January 29, 2000, Appellant went to get cigarettes and did not return until 7:30 a.m. on January 30, 2000. When Appellant returned home, he told Sanders that he had given their rent money to another woman that he was seeing. The argument escalated when Appellant accused Sanders of having another relationship as well, and he proceeded to hit her with his fists telling her that he was going to kill her. Appellant then gagged Sanders with a shirt and tied her hands to a chair with a rag. At that point, Appellant left their home.

Sanders was unable to free herself from the chair for ten minutes. Once free, Sanders called 911; two officers responded and offered her medical treatment. A domestic violence detective interviewed Sanders at her home, where she stated that her boyfriend assaulted her and tied her up. Sanders also told the detective where he might find Appellant. Sanders went to the hospital later that day. Based on the interview with the domestic violence detective, the police arrested Appellant, who denied having tied Sanders to the chair or striking her.

At trial, Appellant objected to two pieces of evidence. First, Appellant objected to the admission of Sanders' medical records because they constituted hearsay and prior consistent statements due to the fact that Sanders testified at trial. The trial court redacted some portions of the records, but admitted the portion that reads:

states was tied up and assaulted by boyfriend this AM at 700. Ligature marks to bilateral wrists. Multiple bruises to face. States was hit on right knee with hammer. Able to bear weight. Denies sexual assault.

Second, Appellant objected to the admission of Sanders' 911 call reporting the incident to the police. At trial, the State

---

1. All further statutory references are to RSMo (2000) unless otherwise indicated.

2. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct 1712 (1986).

called Officer John Clobes (hereinafter, "Officer Clobes") to testify regarding the tape recording of Sanders' 911 call. Defense counsel objected to Officer Clobes' testimony because he was not the officer who had taken Sanders' statement. When the prosecutor stated that Officer Clobes' testimony was foundational only, defense counsel acquiesced. Defense counsel further objected prior to the playing of the tape on chain of custody grounds and renewed his earlier objection. On the tape, Sanders identified Appellant as her assailant and told the operator that "he beat me up."

The jury found Appellant guilty of felonious restraint, Section 565.120, and misdemeanor assault in the third degree, Section 565.070. Appellant was sentenced to concurrent terms of ten years imprisonment for felonious restraint and one year for misdemeanor assault. This appeal follows.

Appellant's first point on appeal alleges that the trial court erred in overruling his *Batson* challenge because the trial court believed it had to accept demeanor explanations as race-neutral and there were similarly situated white jurors who were not struck from the venire. We disagree.

Appellant made a timely *Batson* objection that an African American venireperson (hereinafter, "the venireperson") was struck from the panel. The prosecutor explained that she struck the venireperson because of her demeanor, saying that the venireperson was "curt" to her. The prosecutor contrasted the venireperson's demeanor toward the defense attorney, who is African American, stating that when the defense attorney stood up the venireperson "was all smiles for him." The trial court accepted this race-neutral explanation from the prosecutor saying that "demeanor is a sufficient race-neutral reason for the use of a peremptory strike...." During voir dire, the defense attorney only asked whether the trial court had witnessed this alleged curtness. The trial court stated that it had not. The defense attorney did not offer any evidence that the prosecutor's demeanor explanation was pretextual at that time.

To make a *Batson* challenge based on race, the defendant must first make a prima facie case showing of purposeful discrimination. *State v. Parker*, 836 S.W.2d 930, 933 (Mo. banc 1992). In order to make a prima facie case, a defendant must make a timely objection to the strike by sufficiently raising the inference that the state exercised the strike to purposefully remove venire members on the basis of race. *State v. Sutherland*, 939 S.W.2d 373, 379 (Mo. banc 1997). After making a prima facie case, the burden shifts to the state to offer a race-neutral reason for striking the challenged venireperson. *State v. Aziz*, 861 S.W.2d 803, 805 (Mo. App. E.D.1993). Finally, after the state has offered their race-neutral explanation for striking a venireperson, the defendant has the burden of showing that the state's proffered explanations are pretextual. *Id.* The issues we must resolve are whether: (1) the State met the burden of articulating a race-neutral explanation with its demeanor explanation, and (2) Appellant met his burden of showing the proffered explanation was pretextual.

The trial court's determination regarding purposeful discrimination is a finding of fact that should not be disturbed on appeal unless clearly erroneous. *State v. Shaw*, 14 S.W.3d 77, 82 (Mo.App. E.D. 1999). To be clearly erroneous, the reviewing court must have a definite and firm conviction that a mistake was made. *State v. Gray*, 849 S.W.2d 115, 117 (Mo. App. E.D.1993). "If a defendant fails to

challenge the state's explanations in the trial court, the defendant may not challenge the state's explanation on appeal." *Aziz*, 861 S.W.2d at 805.

In *Aziz*, this Court stated that a trial court must look to the plausibility of the state's explanations in light of the totality of the circumstances to determine whether the defendant carried his or her burden by showing that the proffered explanation was merely pretextual. *Id*. The *Aziz* court also listed other factors that the trial court should consider when deciding whether the prosecution's explanation is nothing more than pretextual, including: (1) the existence of similarly situated white jurors who were not struck; (2) the degree of relevance between the explanations and the case to be tried "in terms of the kind of crime charged, the nature of the evidence to be adduced, and the potential punishment"; (3) the prosecutor's demeanor or statements during voir dire; (4) *the demeanor of the excluded venirepersons;* (5) the trial court's past experiences with the prosecutor; and (6) other objective factors bearing on the state's motive to discriminate on the basis of race. *Id*. (emphasis added). The prosecutor's use of hunches is allowed when striking jurors, although objective justifications are preferred. *Parker*, 836 S.W.2d at n. 8 939.

◼ Appellant alleges that the trial court erroneously believed it was bound to accept any demeanor explanation that did not refer to race. While the trial court is not bound to accept demeanor evidence, it should accept demeanor evidence when determining whether a defendant has carried his or her burden with respect to purposeful discrimination. *Aziz*, 861 S.W.2d at 805. Moreover, trial judges have many other factors to consider in reaching their determination. *Id*. Therefore, while the trial court was not bound to accept the demeanor explanation offered by the State,

it should have under *Aziz*, and thus, it was not error for the trial court to accept the demeanor explanation.

After the State met its burden by supplying a race-neutral explanation for the strike, Appellant must show that the explanation was pretextual. For the first time on appeal, Appellant attempts to show pretext by arguing that there were similarly situated white venirepersons who were not struck from the panel. The only objection Appellant made at trial was that the trial court did not witness the demeanor of the venireperson. There was no objection made during voir dire that similarly situated white venirepersons were not struck from the panel. Since Appellant failed to challenge the State's explanation in the trial court as pretextual, he may not challenge the State's explanation on appeal. *Aziz*, 861 S.W.2d at 806. Point denied.

◼ Appellant's next point on appeal argues the trial court erred by admitting Sanders' medical records because they improperly bolstered her testimony. At trial, Sanders testified Appellant threatened to kill her, punched her, gagged her, and tied her to a chair. Immediately following Sanders' testimony, the medical records were admitted over defense objection that they improperly bolstered Sanders' testimony. The medical records were redacted with the following portion being admitted:

> states was tied up and assaulted by boyfriend this AM at 700. Ligature marks to bilateral wrists. Multiple bruises to face. States was hit on knee with hammer. Able to bear weight. Denies sexual assault.

Appellant cross-examined Sanders after the medical records were introduced.

◼ The trial court has broad discretion in admitting evidence, and its decisions will be affirmed on appeal absent an

abuse of discretion. *State v. Anglin,* 45 S.W.3d 470, 472 (Mo.App. W.D.2001). Abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances then before the court, and is so unreasonable and arbitrary that the ruling shocks the [court's] sense of justice, and indicates a lack of careful consideration. *Id.* When reviewing matters involving admission of evidence, we review for prejudice, not mere error, and will reverse only if the error was so prejudicial as to deprive the defendant of a fair trial. *Id.* A defendant must show there was a reasonable probability that without the admission of the evidence the verdict would have been different. *State v. Duncan,* 27 S.W.3d 486, 488 (Mo.App. E.D.2000).

 Medical records are almost always admissible to prove history, diagnosis, treatment, and prognosis, when their authenticity is not disputed. *Friese v. Mallon,* 940 S.W.2d 37, 40 (Mo.App. E.D. 1997); Uniform Business Records Act, Sections 490.660–490.690 RSMo (1949). However, the use of duplicative and corroborative extrajudicial statements is restricted substantially when a witness testifies. *State v. McMillin,* 783 S.W.2d 82, 98 (Mo. banc 1990). Admission of these statements is harmless error when the statement adds nothing substantial, the witness is available for cross-examination, and evidence of the defendant's guilt is strong. *Id.*

As a practical matter, from the face of the admitted portions of the medical records it does not appear that the statement "tied up and assaulted *by boyfriend . . .*" (emphasis added) proves anything regarding her history, diagnosis, treatment, or prognosis. While it may have been error to admit the portion of the record that referred to Appellant, we review for prejudice, not mere error, and we conclude that in light of the other evidence Appellant was not prejudiced by the admission of the medical records. Sanders' statement in the medical records did not add anything to her testimony. *McMillin,* 783 S.W.2d at 98. Additionally, Appellant cross-examined Sanders. *Id.* Further, evidence of Appellant's guilt was strong. *Id.* Sanders called 911 immediately following the incident stating that Appellant beat her up. Police found Sanders with "scrapes and open wounds on her wrist" and with her left eye "swollen shut." Sanders identified Appellant to a domestic violence officer.

We conclude that the trial court's ruling in this case was not so unreasonable and arbitrary that it shocks our sense of justice and indicates a lack of careful consideration. We cannot say that Appellant was deprived of a fair trial by the admission of the medical records. Nor can we say that without the admission of the evidence, the verdict would have been different. Point denied.

 Appellant's final point on appeal argues the trial court erred by admitting the tape of the 911 call to police from Sanders. Appellant contends that the 911 tape improperly bolstered Sanders' testimony at trial. The State argues that this point has not been preserved for appeal because it was not objected to on the grounds of improper bolstering during trial.

 To preserve an evidentiary issue for appeal, a defendant must object at trial and raise the issue in a motion for a new trial. *State v. Dixon,* 24 S.W.3d 247, 251 (Mo.App. E.D.2000). Appellant objected to the 911 tape on chain of custody grounds but failed to object on the grounds that the 911 tape improperly bolstered Sanders' trial testimony. Thus, this issue is not preserved for appeal because Appellant did not object at trial and did

not raise the issue in his motion for new trial.

Therefore, we review for plain error only. The alleged wrongful admission of evidence will not constitute plain error if it is merely cumulative to other properly admitted evidence. *Id.* At trial, Sanders testified that Appellant threatened to kill her, punched her, gagged her, and tied her to a chair. In Sanders' 911 call to the police, she only stated that her boyfriend beat her up. In this case, the tape of the 911 call to police from Sanders is merely cumulative of her testimony at trial, and therefore, does not rise to the level of plain error. Point denied.

The judgment is affirmed.

MARY R. RUSSELL, J., and MARY K. HOFF, J., concur.