Detective Bearden also testified in Maples's offer of proof. He had interviewed Timothy after the murder. Timothy had denied ever being at Belinda's home or the farm prior to the murder. Detective Bearden also interviewed Chastain. Chastain told Detective Bearden that Timothy had made the following statement to her on January of 2014: "The kid didn't know what he was walking into." Chastain said she did not know who Timothy was referring to when he made that statement. Chastain also said that Timothy made the following statement: "I don't deserve to be alive. I killed her." Chastain again said she did not know who Timothy was referring to. Detective Bearden testified that there was no physical evidence that tied Timothy to Belinda's murder. Chastain, in a statement to law enforcement in March of 2015, stated that Timothy had told her "I killed Bea." Chastain first contacted law enforcement regarding Timothy's admissions of guilt on March 26, 2015, ten days after the *643 prosecutor filed a nolle prosequi in the charges against Bob II.
Billy Fahnestock ("Fahnestock") also testified in Maples's offer of proof. At one point, Fahnestock was in the same jail pod as Bob II. During the offer of proof Maples asked Fahnestock to acknowledge a prior statement that Fahnestock made during a deposition regarding Bob II murdering Belinda. However, Fahnestock asserted his rights under the Fifth Amendment to the Constitution and refused to answer most questions and in those that he did answer he said he did not remember making any prior statements.
After the offer of proof, the trial court ruled that Chastain and Fahnestock would not be permitted to testify before the jury. The trial court reserved ruling on whether Seth would be permitted to testify. However, Maples never attempted to call Seth as a witness before the jury or request a final ruling from the trial court on whether he would be allowed to testify.
The jury returned a verdict of guilty of murder in the first degree. On August 5, 2016, the trial court sentenced Maples to life in prison without the possibility of parole. This timely appeal followed.
Discussion
Maples raises four points on appeal. In Maples's first point on appeal, he argues that the trial court erred in admitting his statements to Detective Schlup in the sally port into evidence at trial because it violated his Fifth Amendment rights as he was not provided Miranda warnings prior to his statement. In Maples's second point on appeal, he argues that the trial court erred in admitting his formal statement made on August 22, 2012, because the improper tactics used during the sally port interview rendered the Miranda warning on August 22 ineffective. In Maples's third point on appeal, Maples argues that the trial court erred in admitting his statement made on August 23, 2012, because the improper tactics used in the sally port interview rendered the Miranda warning ineffective. In Maples's fourth point on appeal, he argues that the trial court abused its discretion in sustaining the State's objection to Maples's offer of proof regarding information that Timothy confessed to shooting Belinda because the exclusion of this evidence violated his rights under the Sixth and Fourteenth Amendments since the evidence was exonerating and made under circumstances providing considerable assurance of its reliability.
Analysis of Points One, Two, and Three
Standard of Review
"Review of a trial court's decision as to a motion to suppress evidence is limited to a determination of whether there is substantial evidence to support its decision." State v. Tackett , 12 S.W.3d 332, 336 (Mo. App. W.D. 2000). "The trial court's ruling on a motion to suppress will be reversed only if it is clearly erroneous." State v. Hoyt , 75 S.W.3d 879, 882 (Mo. App. W.D. 2002). "The trial court's ruling is clearly erroneous if this court is left with a definite and firm belief a mistake has been made." Id. "This court reviews the trial court's decision viewing the facts and reasonable inferences therefrom in the light most favorable to the trial court's order with the freedom to disregard contrary evidence and inferences." Id.
State v. Wilson , 169 S.W.3d 870, 875 (Mo. App. W.D. 2005).
Point One
In Maples's first point on appeal, he argues that the trial court erred in admitting the statements he made to Detective Schlup while in the sally port (for ease of reference we will refer to the August 22, *644 2012 interview in the jail sally port as the "Sally Port Interview") into evidence at trial over his objection. Maples argues that this ruling violated his Fifth and Fourteenth Amendment rights because the Sally Port Interview was a custodial interrogation and he was not given his Miranda warnings. Maples argues that since he did not receive a Miranda warning before his conversation with Detective Schlup, the statements he made at that time could not be used at trial.
"A criminal suspect is entitled to Miranda warnings, consistent with the Fifth Amendment right against self-incrimination, once the suspect is subjected to a custodial interrogation." State v. McClendon , 477 S.W.3d 206, 212 (Mo. App. W.D. 2015) (quoting State v. Gaw , 285 S.W.3d 318, 321 (Mo. banc 2009) ). "Statements obtained by police during a custodial interrogation not preceded by Miranda warnings are inadmissible in court." Id.
"Custody," under Miranda case law, is a term of art used to specify circumstances that are thought to present a serious danger of coercion. Howes v. Fields , 565 U.S. 499, 509, 132 S.Ct. 1181, 182 L.Ed.2d 17 (2012) (holding that Howes was not in custody within the meaning of Miranda , despite him being a prison inmate, because Howes was free to end the questioning at any time and request to be returned to his cell). "A defendant's status as a prison inmate does not necessarily make an interview by prison officials 'custodial interrogation' requiring the protections set out in Miranda ." State v. Brown , 18 S.W.3d 482, 485 (Mo. App. E.D. 2000).
Instead, when a prisoner is questioned, "language used to summon the individual, the physical surrounding of the interrogation, the extent to which he is confronted with evidence of his guilt, and the additional pressure exerted to detain him must be considered to determine whether a reasonable person would believe there had been a restriction of his freedom over and above that in his normal prisoner setting."
Baumruk v. State , 364 S.W.3d 518, 528 (Mo. banc 2012) (quoting Brown , 18 S.W.3d at 485 ).
Nothing in the record indicates that Maples was interviewed in a coercive atmosphere or that any coercive questioning techniques were used during the Sally Port Interview. Maples was not summoned for questioning. In fact, Maples summoned Detective Schlup because he wanted to voluntarily provide information to law enforcement regarding the murder. Until that point, Maples had not provided any information which would incriminate himself in the murder and there was no way for Detective Schlup to know that he would incriminate himself instead of providing information incriminating to some other individual or suspect. Maples was outside in the sally port, smoking a cigarette as he had requested, not in a closed room as typically used in custodial interrogations. Maples was not confronted with any evidence against him. Detective Schlup merely came to the sally port at the request of Maples and told him that he would not be allowed to see his fiancé, as requested, unless he could provide some limited details of what information he was offering to provide so they could determine if he had anything of value to offer which would justify the special treatment of allowing him contact with his fiancé. The only question Detective Schlup asked was to clarify what Maples believed Bob II had meant when he said "it has to be done tonight." Detective Schlup testified that Maples could have ended the discussion at any time. When Detective Schlup began to ask further questions and Maples said he would not respond further until his fiancé was present, questioning ceased and his fiancé was brought to meet with him. Maples *645 did not have any restraints on his hands or ankles. Under these facts, even though Maples was detained in the jail, he was not under custody for the purposes of Miranda . The trial court did not clearly err in determining that Maples's statements in the Sally Port Interview were not obtained in violation of Miranda . Point One is denied.
Points Two and Three
As Points Two and Three present the same issue, we choose to address them together. In Points Two and Three, Maples argues that the trial court erred in admitting his statements on August 22nd and August 23rd because the Miranda warnings provided prior to those statements were ineffective because the Sally Port Interview had already established a Miranda violation. However, because we find that there was no Miranda violation in the Sally Port Interview and Maples raises no other arguments as to why the Miranda warnings provided on the subsequent interviews were ineffective we deny Points II and III.
Analysis of Point Four
Standard of Review
"A trial court has broad discretion to admit or exclude evidence," and such discretion will only be reversed for a clear abuse of discretion. State v. Forrest , 183 S.W.3d 218, 223 (Mo. banc 2006). A trial court abuses its discretion when its ruling "is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." Id. Further, "in cases concerning the admission or exclusion of evidence, we review for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." State v. Cofield , 95 S.W.3d 202, 205 (Mo. App. S.D. 2003) (internal quotation omitted). "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error effected the outcome of the trial." State v. Pickens , 332 S.W.3d 303, 318 (Mo. App. E.D. 2011).
Analysis
Maples argues in his fourth point on appeal that the trial court abused its discretion in sustaining the State's objection to Maples's offer of proof regarding information that Timothy confessed to shooting Belinda. Specifically, Maples argues that the exclusion of this evidence violated his rights under the Sixth and Fourteenth Amendments as the evidence was exonerating and made under circumstances providing considerable assurance of its reliability. "Evidence that another person had an opportunity or motive for committing the crime for which the defendant is being tried is not admissible without proof that such other person committed some act directly connecting him with the crime." State v. Schaal , 806 S.W.2d 659, 669 (Mo. banc 1991), cert. denied , 502 U.S. 1075, 112 S.Ct. 976, 117 L.Ed.2d 140 (1992) (quoting State v. Easley , 662 S.W.2d 248, 251-52 (Mo. banc 1983) ).
Hearsay is an "out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value." State v. Kemp , 212 S.W.3d 135, 146 (Mo. banc 2007). "[A]n out-of-court statement may be admitted pursuant to the constitutionally based hearsay exception in the due process clause." State v. Taylor , 298 S.W.3d 482, 493 (Mo. banc 2009). "This exception applies to hearsay statements that 'both exonerate the accused and are originally made and subsequently offered at trial under circumstances providing considerable assurance of their reliability.' " Id. (quoting State v. Hutchison , 957 S.W.2d 757, 761 (Mo. banc 1997) ).
For a hearsay statement of another confessing to the offense which may *646 exonerate the accused to be admitted into evidence at trial, "[t]hree circumstances of reliability have been recognized: '1) each confession is in a very real sense self-incriminatory and unquestionably against interest; 2) each statement was spontaneously made to a close acquaintance shortly after the murder occurred; and 3) the statements are corroborated by other evidence in the case.' " Id. (quoting Hutchison , 957 S.W.2d at 761 ). All three indicia of reliability must be met to allow admission of the hearsay statements into evidence. State v. Anglin , 45 S.W.3d 470, 473 (Mo. App. W.D. 2001).
In this case, it is clear that Timothy's statements to Chastain did not meet all three indicia of reliability. While Timothy's statements were made in front of Seth, who would qualify as a close acquaintance, Timothy's statements were not made shortly after the murder occurred. The statement to Chastain was ambiguous and was made years after the murder in question. Finally, there was no corroborating physical evidence to support the alleged confession. Maples pointed to no corroborating evidence from which the trial court could support a finding that the alleged confession was reliable. As stated supra , all three indicia of reliability must be met to support admission of the statements into evidence. Anglin , 45 S.W.3d at 473. Further, evidence was presented that Timothy's statements were in fact unreliable. Chastain testified that the statements were made under the influence of significant amounts of drugs and alcohol, which Seth testified had caused Timothy to make completely false and outrageous claims in the past. Chastain also testified that she originally did not even believe Timothy's statements but years later after discussions with a representative of defense counsel she thought they may be true. Chastain's testimony did not meet the requirements for admissibility.
We do not reach the issue of the admissibility of Seth's testimony as the trial court reserved ruling on this issue and Maples did not offer the evidence at trial or get a final ruling from the trial court. An appellate court is a court of review to determine whether the ruling of the trial court was correct. State v. Davis , 348 S.W.3d 768, 770 (Mo. banc 2011). Only those issues presented to or decided by the trial court will be considered on appeal. Id. Maples did not request plain error review of the admissibility of Seth's testimony, but even plain error review is not available because the evidence was never offered at trial.
The trial court did not abuse its discretion in refusing to allow the hearsay testimony regarding Timothy's alleged confession as the three indicia of reliability were not met and evidence demonstrated the unreliability of the statements. Point Four is denied.
Conclusion
The trial court's judgement is affirmed.
All concur